UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 17-60926-CIV-WPD

ROGER ANDREU,                        .
                                     .
            Plaintiff,               . Fort Lauderdale, Florida
                                     . April 19, 2018
            v.                       . 9:35 a.m.
                                     .
WASTE PRO OF FLORIDA, ET AL.,.
                                     .
            Defendants.              .
. . . . . . . . . . . . . . . .

- - - - -

Transcript of Trial Proceedings had

before the Honorable William K. Dimitrouleas,

United States District Judge, and a Jury.

- - - - -

VOLUME 4

- - - - -

Proceedings recorded by mechanical stenography, transcript
produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(954)769-5657

**APPEARANCES:**

For the Plaintiff:     Paul D. Edwards, Esq.
                                 Marc E. Rosenthal, Esq.
                                 Rosenberg, Cummings & Edwards, PLLC
                                 801 NE 20th Avenue
                                 Fort Lauderdale, Florida  33304

For the Defendant:     Amy S. Tingley, Esq.
                                 Joseph S. Hudson, Esq.
                                 Stovash, Case & Tingley, P.A.
                                 220 North Rosalind Avenue
                                 The VUE at Lake Eola
                                 Orlando, Florida  32801

Court Reporter:        Francine C. Salopek, RMR, CRR
                                 Official Court Reporter
                                 United States District Court
                                 299 E. Broward Blvd., Room 205F
                                 Fort Lauderdale, Florida 33301
                                 (954)769-5657/mjsfcs@aol.com

- - - - -

| | |
|---|---|
| 1 | **THURSDAY, APRIL 19, 2018, 9:35 A.M.** |
| 2 | *(The Judge already on the bench)* |
| 3 | **THE COURT:**  Do we have everybody, Terry? |
| 4 | **COURTROOM SECURITY OFFICER:**  Yes. |
| 5 | **THE COURT:**  Oh, good. |
| 6 | **MS. TINGLEY:**  Your Honor, may we step up to put |
| 7 | numbers on the exhibits? |
| 8 | **THE COURT:**  Okay. |
| 9 | **MR. EDWARDS:**  Thank you, your Honor. |
| 10 | **MS. TINGLEY:**  Your Honor, now that they're in, do you |
| 11 | want us to number in the order they came in or keep the numbers |
| 12 | from the pretrial statement? |
| 13 | **THE COURT:**  The numbers from the pretrial statement. |
| 14 | **MR. EDWARDS:**  Thank you. |
| 15 | **MS. TINGLEY:**  Thank you. |
| 16 | **THE COURT:**  So, in other words, it would be 1 through |
| 17 | 9 and 13 and 14 for the plaintiff, and 3 and 16 for the |
| 18 | defense. |
| 19 | **MS. TINGLEY:**  Thank you. |
| 20 | *(Discussion had off the record between counsel)* |
| 21 | **THE COURT:**  All right.  We're back on the record. |
| 22 | Counsel are present. |
| 23 | Anything to come before the Court before we bring the |
| 24 | jury in? |
| 25 | **MS. TINGLEY:**  No, your Honor. |

CLOSING ARGUMENT - EDWARDS

1          **MR. EDWARDS:**  No, your Honor.

2          **THE COURT:**  All right.  Let's bring in the jury.

3          **COURTROOM SECURITY OFFICER:**  All rise.

4          *(The jury entered the courtroom)*

5          **THE COURT:**  All right.  We have all the jury back.

6          Did everyone follow my admonition not to discuss the

7  case or allow it to be discussed in your presence?

8          All right.  Both sides have now rested their cases.

9  Now the attorneys will have an opportunity to make their

10  closing arguments.  What the attorneys say is not evidence, but

11  their arguments are intended to aid you in understanding the

12  case.  Each side will have equal time, but Mr. Edwards is

13  entitled to divide that time between an opening argument and a

14  rebuttal argument after Ms. Tingley has spoken.

15          Mr. Edwards.

16          **MR. EDWARDS:**  Thank you, your Honor.

17          May I proceed, your Honor?  Thank you.

18          Good morning.

19          When I had an opportunity to speak to you a few days

20  ago when we began this trial, I told you that the evidence that

21  we would present to you throughout the course of this case

22  would show you that sometimes it's possible that a system can

23  be set up in such a way to prevent a person from being able to

24  get ahead, to keep them treading water.  And I'll submit to you

25  that over the course of this trial, that's exactly what we've

CLOSING ARGUMENT - EDWARDS

1    shown you, that that's the policy at Waste Pro when it comes to

2    compensating their employees.  Not just their employees, but

3    the employees that make Waste Pro what it is -- a waste and

4    recycling disposal company.

5         Fortunately, that doesn't have to be the way it goes.

6    You have sat with us and heard the evidence in this case,

7    you've heard the arguments from the attorneys, and soon that

8    will all be over.  We're going to give the case to you, and

9    we're asking you to make a decision.  We're gonna ask for you

10   to make this right.

11        If this were something that could be resolved simply

12   on a legal issue, we wouldn't be here.  We wouldn't be here

13   asking you to make a decision.  I want to thank you again for

14   being with us, for giving us your attention, and for giving us

15   your patience.  I understand that trials, particularly trials

16   dealing with the issues that we're dealing with in this case,

17   looking at time record after time record after time record of

18   employees, can be long and tiresome, and it can be tedious.

19   But you stuck with us, you've listened to the evidence, you've

20   taken notes, and you'll make the right decision.

21        The issues that are for your determination are

22   actually a lot more straightforward than the back and forth

23   that you might have seen from the lawyers and the back and

24   forth with the witnesses.

25        When you leave to deliberate, you'll be provided a

CLOSING ARGUMENT - EDWARDS

1    copy of a verdict form, and it's going to have questions for

2    you.  And those questions are those straightforward issues.

3    Those questions are:  Did the defendants fail to pay the

4    plaintiff, Roger Andreu, the overtime that's required by law?

5            You'll also be asked if the defendants knew or showed

6    reckless disregard for whether their failure to pay overtime

7    appropriately was prohibited.

8            You'll also be asked if Mr. Andreu should be awarded

9    damages, and, if so, the amount of those damages, for the three

10   years prior to his filing of his case against the defendants.

11           And, lastly, you'll be asked to decide if the

12   defendants' actions, even if they did pay incorrectly, were

13   taken in good faith and in conformity with and reliance on

14   administrative interpretations by the Department of Labor.

15           It's important that you know that the decision you

16   make will be the right decision, and it is the right decision,

17   because you as the jury are the ones that make it.  You're

18   going to receive instructions from Judge Dimitrouleas, and

19   you're going to be able to take and look at the evidence that

20   was submitted and put into evidence in this case.  That will go

21   with you as you're asked to go and decide the issues that we've

22   presented.

23           The judge mentioned this, but much like when I spoke

24   to you at the beginning of this case, the words that I'm giving

25   you right now are not evidence in this case.  Neither are the

557
CLOSING ARGUMENT - EDWARDS

```
 1    words that the defendants' attorneys will give you in a moment.
 2         This is my opportunity, though, to explain to you some
 3    of what you've seen and some of what you heard, because I know
 4    it can be confusing.  And it's my chance to explain to you why
 5    all of the information that you have seen and received and has
 6    been taken into evidence in this trial all leads to the same
 7    conclusion -- that the defendants, in utilizing the payment
 8    method they did, in the manner that they did, did not pay
 9    Mr. Andreu properly as the FLSA requires.
10         You're also going to be receiving lists of
11    instructions.  And I'm going to show you some of those, because
12    those are the basis that you apply the law to the facts in this
13    case.
14         As to the instruction number 8 on the Fair Labor
15    Standards Act, you'll be asked to decide two different things.
16    First, you'll be asked to decide if the plaintiff was an
17    employee of the defendants and was employed by an enterprise
18    engaged in commerce.  You may be asking yourself, Why haven't I
19    heard anything about that?  But as you read down, you'll see
20    that that's because that's not an issue in this case.  That's
21    stipulated to.  So, if you had any questions as to why
22    Mr. Mackie is listed as a defendant individually in this case,
23    that's because he is an employer under the law.  Both sides
24    agree to that.  It's not a personal vendetta.  He qualifies as
25    an employer.
```

CLOSING ARGUMENT - EDWARDS

1          You're also going to be asked to determine if it is

2     more likely than not or if Mr. Andreu has proved by a

3     preponderance of the evidence that the defendants failed to pay

4     him overtime properly.

5          Now, I mentioned some issues to you in my opening

6     statement dealing with the Fair Labor Standards Act.  And,

7     again, the Fair Labor Standards Act is a federal law that

8     requires that employers who employ employees for longer than

9     40 hours in a workweek pay them overtime, and it requires that

10    that overtime be paid at time and a half.  That's where we

11    start.

12         It exists for the very purpose that we're here.  It

13    exists to protect employees from unfair wage practices.  It

14    exists to reward employees who are asked to work longer hours

15    than 40 hours in a workweek.  It exists to reward employees who

16    take it upon themselves to do more work to improve their

17    situation.  It's not designed to be complex.

18         I also spoke to you about how there are alternatives

19    under the FLSA that an employer can utilize to avoid paying

20    overtime at time and a half.

21         I told you that they have common names that you have

22    heard in this trial, things like "day rate" and "job rate" that

23    have common meanings and legal meanings.

24         In theory, I told you that it can be beneficial to an

25    employee, if they are properly employed under the day rate

CLOSING ARGUMENT - EDWARDS

1    method.  But when the rules to the day rate method are not

2    followed, it can result in an employee doing more and more work

3    for less and less compensation.

4         Waste Pro has chosen to utilize the day rate method.

5    They did it for the reason that businesses do things -- they

6    did it to save money.  They did it because it allows them, in

7    their belief, to calculate the overtime of Mr. Andreu at half

8    time instead of time and a half.

9         So, when we figure his regular rate, which I'll speak

10   to you about later, we multiply that by .5 instead of 1.5.  We

11   also take into account all of the hours he worked in the day in

12   that equation.  So, the more hours he works, the lower and

13   lower his wages are, and the lower and lower his overtime is.

14        Fortunately, there are rules to utilize that.  And you

15   will see what those rules are.  Because those rules were not

16   followed, Waste Pro is not allowed to calculate overtime in the

17   method that Ms. Lombardo drew up on that board for you.

18        You may remember, I asked you to pay attention to the

19   explanations, or lack of explanations, that you got from

20   Waste Pro, not about how they calculate it, but about why they

21   believe they're allowed to calculate it that way.

22        In other words, calling an employer -- or employee a

23   day rate employee does not necessarily make them a day rate

24   employee.  Calling their rate of pay a daily rate does not

25   necessarily make them a day rate employee that allows their

CLOSING ARGUMENT - EDWARDS

1    employer to calculate their overtime in that fashion.

2            You're going to see an instruction that deals with

3    this very issue, an instruction regarding overtime pay for day

4    rates and job rates.  And that will tell you that under the

5    law, "An employee earns a day or job rate if he receives a flat

6    sum for a day's work or for doing a particular job, regardless

7    of the number of hours he works in a day or at the job, and

8    receives no other compensation for services."  Flat sum,

9    regardless of the number of hours he works in the day, and

10   receives no other forms of compensation for services.

11           I'm gonna start with the first of those.

12           "A flat rate, regardless of the number of hours

13   worked."  Both sides in this case have showed you that

14   Waste Pro broke that rule and does not pay a true day rate.  We

15   saw two occasions where Waste Pro paid Mr. Andreu a half day

16   rate -- once on September 30th of 2016 and on a second occasion

17   on April 16th of 2016 -- 2017, I apologize.

18           You'll notice in the jury instruction regarding the

19   day rate, there is no reference to a half day rate, none at

20   all.  That's because a payment of a half day rate means that

21   time is factored in.  And under the day rate, you cannot factor

22   time in.  It is a flat rate, regardless of the hours worked in

23   a day.  For that reason, it's not a legal day rate.

24           It's important, too, because Waste Pro didn't tell you

25   that this is maybe two isolated incidents, there was an

CLOSING ARGUMENT - EDWARDS

1  accounting error, maybe someone inputted the numbers

2  incorrectly.  You heard different from that.  You heard that

3  there's a policy at Waste Pro, a policy to pay employees a half

4  day rate when they work less than 4.1 hours in a day.  That

5  means that this is not a day rate, and they cannot use that

6  calculation to determine overtime.

7        This matters because on those two occasions,

8  Mr. Andreu was supposed to receive his day rate of $207.79.

9  So, it means not only did they not pay him the half of that,

10  the other half of his day rate, which would be $103.89, but

11  it's more important that.  Because as we'll explain to you,

12  when you calculate overtime, you have to calculate all of the

13  compensation and all of the hours that the parties agreed that

14  the job or task or work or whatever rate was intended to

15  compensate them for.

16        And what that means is that since that additional

17  payment was not included in his total compensation, it dilutes

18  and whittles away and waters down his overtime.  You are the

19  ones that will be charged with determining that.  And my words,

20  again, are not evidence.  But you will find, even under

21  Waste Pro's math, that Mr. Andreu is owed money for those half

22  pay days.  Because it affects the way his overtime is paid.

23        But it's more than that.  It's more than that, because

24  it's not just about those two instances and the 30-some-odd

25  dollars he may be owed in overtime for those.  It's more

CLOSING ARGUMENT - EDWARDS

1   important than that because what this does is it shows that

2   they cannot utilize that payment methodology, they can't

3   utilize that half time rate to calculate Mr. Andreu's overtime.

4   That's why this information was not given to the attorney you

5   saw testify yesterday when he conducted his audit of their

6   payment practices.  He hadn't heard of that.  He hadn't

7   considered it in his audit.  That's why Mr. Mackie contradicted

8   himself about whether or not that policy exists.

9           You can consider that as well in evaluating

10  Mr. Mackie's testimony, that inconsistency.  That's not a small

11  inconsistency.  He denied it directly.  But when he was asked,

12  Is there a minimum number of hours that Mr. Andreu was required

13  to work to receive his rate, he said four hours and one minute.

14          Ms. Lombardo agreed to that.  You heard her testify

15  that there's a policy at Waste Pro to pay half time for days

16  that are worked less than 4.1.

17          And putting aside the contradiction, Mr. Mackie also

18  told you that there can be days where maybe it's just a task,

19  and in the subjective, single determination of the supervisor,

20  maybe a half day will work that day.

21          That's not how it works.  That's not how the day rate

22  works.

23          When Ms. Lombardo testified, she was able to explain

24  the math of how they arrive at the numbers they arrive at, but

25  she wasn't able to explain why it is they're allowed to utilize

CLOSING ARGUMENT - EDWARDS

1    that rate, why they comply with this provision.

2         The second issue, I'll submit to you, is even clearer

3    than that.  "Is paid no other compensation for services."

4    That's not even something they try to hide.  They just call it

5    a different name.  They call it a bonus, an extra work bonus.

6         It's not a bonus.  It's additional pay for additional

7    work.  You heard their witnesses testify to that.

8         A bonus is a reward for doing something well or maybe

9    for not even doing anything at all.  That's not what this was.

10        You saw the policies of Waste Pro, that they require

11   their day rate employees at the completion of their assigned

12   route, which Mr. Mackie told you was designed to be between

13   eight and ten hours, that they weren't ever really done, they

14   were required to call in.  You can see that the fourth offense

15   for not calling in is termination of their employment.

16        They were required to call back in and ask if there

17   was more work to do.  That's important.

18        And there were occasions where they were given extra

19   compensation to do this work.  That's exactly what the rule

20   prohibits.

21        Roger told you about some of those promises as well.

22   He told you that they were promised to him almost three times a

23   week, and on some occasions, when they were promised to him, he

24   wasn't paid for it.  That the defendants would use this to get

25   more work out of the guys and never really explained to them

CLOSING ARGUMENT - EDWARDS

```
 1    that under the way Waste Pro was calculating the overtime, that
 2    doesn't work out for them.  Yes, they did get a bonus.  On the
 3    days that it was paid consistently and in accordance with their
 4    promises, they did get a bonus.  But they had to go back out to
 5    work.  They had to do other jobs.
 6           And when they did that, they stayed on the clock,
 7    because Waste Pro had another policy that made them stay there.
 8    And every hour that they worked was slowly whittling away at
 9    their regular rate, which is then used to calculate their
10    overtime rate.  It's because Waste Pro uses that method, when
11    they can't, to calculate their overtime.
12           You should remember, too, when it comes to the
13    nonpayment of those bonuses, Mr. Andreu told you that those
14    bonuses weren't paid to him approximately two out of three
15    times, and that he would be asked to do those bonus tasks about
16    three times a week.  He told you that it wasn't every week, and
17    there were weeks that he was paid all of the bonuses that he
18    was promised.  But the problem is, is that it's not regulated.
19    You heard that there was no policy in place to ensure that when
20    a supervisor told you, I'm gonna give you $50 to go run and
21    pick up that truck, that may take you however many hours, there
22    was no policy in place that required that supervisor to log
23    that request so that that time would be surely entered on their
24    pay sheets.  At least giving them the benefit of a fair
25    exchange.
```

CLOSING ARGUMENT - EDWARDS

1        But beyond that, Mr. Mackie admitted it in his own

2   words.  It's additional compensation.  It's additional money

3   for extra work.

4        **THE COURT:**  Three minutes.

5        **MR. EDWARDS:**  Waste Pro can deny that, but they didn't

6   bring forward anybody that could give you firsthand information

7   that would dispute anything that Mr. Andreu told you about his

8   hiring, about his interview with Waste Pro, about how the

9   payment policies were explained to him, about the routes that

10  he worked, about the extra work and bonuses that he was

11  promised, and about the extra work and bonuses that were

12  promised to him that he wasn't paid.  They can deny it, they

13  can bring up his past, they can make him look bad for trying to

14  earn a living and to try to make money at the job he works at,

15  but they can't deny it.  They didn't prove -- produce anybody

16  who gave you firsthand information that that didn't happen.

17       And they attacked Roger for not being able to

18  reconstruct his time for the routes he drove three years ago

19  from their records.

20       You'll see another instruction that deals with records

21  in this case.  And it's the recordkeeping obligations of

22  employers.

23       I'm gonna have a moment to speak to you after

24  Ms. Tingley speaks to you, and I'm gonna explain some of what

25  this means to you.  But what this means is that when records of

CLOSING ARGUMENT - TINGLEY

1    time and things like that are missing or inaccurate, the burden
2    for Mr. Andreu lowers.  And he can prove this to you by a
3    reasonable inference.  He can prove it to you by his testimony
4    and his recollection.  And then it's up to the defendant to
5    give you information that shows that maybe that inference isn't
6    so reasonable.  They have that information.  They told you
7    about the route sheets.  Why didn't we see the route sheets?
8    If they had a policy in place that required employers -- or
9    employees to log not only their day time, but any additional
10   work time, then we would have the answer as to whether he was
11   paid or not.  We could look right at it and say, That day you
12   were, because you logged the time, you complied with the
13   company's policy.
14        I'll have a moment to speak to you after Ms. Tingley
15   speaks to you, and I'll discuss how it is that we determine
16   what's at issue in this case beyond what we've discussed
17   already in terms of the damages that Mr. Andreu has suffered.
18        I thank you for your time and your attention, and I'll
19   speak to you soon.
20        **THE COURT:**  Ms. Tingley.
21        **MS. TINGLEY:**  May I approach, your Honor?
22        **THE COURT:**  Sure.
23        **MS. TINGLEY:**  Good morning.
24        I'd like to start out by joining counsel in thanking
25   you for your time and attention this week.  Knowing that it's

CLOSING ARGUMENT - TINGLEY

1    not easy.  You're running into lawyers that look away and don't

2    look at you, and you haven't been allowed to talk about it, you

3    haven't been allowed to hear what the judge is going to

4    instruct you.  It can't be an easy task.

5         I tell you, though, that your task gets more difficult

6    now, because now the case goes to you.  And now you have an

7    opportunity to, from your recollection, think about all the

8    evidence you received, after hearing what the judge is going to

9    instruct you, and then you're gonna be asked to decide whether

10   or not Waste Pro and Russell Mackie improperly paid overtime to

11   Roger Andreu under the law.

12        And as was said in his opening statement, the --

13   whether or not they're employers, whether or not he worked more

14   than 40 hours, that's not an issue.  It's going to come down to

15   the one question that's on the verdict form.  You have to find

16   by a preponderance of the evidence that the defendants failed

17   to pay Roger Andreu the overtime required by law.

18        And what is a preponderance of the evidence?  The

19   judge is going to instruct you that the preponderance of the

20   evidence simply means an amount of evidence that is enough to

21   persuade you that the -- Roger Andreu's claim is more likely

22   than true -- more likely true than not true.

23        If the proof -- by Roger Andreu, by the plaintiff --

24   fails to establish any essential part of his claim or

25   contention by this preponderance of the evidence, you should

CLOSING ARGUMENT - TINGLEY

1   find against him.

2           In addition, if the proof fails to establish any part

3   of his claim by a preponderance of the evidence, you should

4   find to the defendants as to that claim.

5           And this is one claim -- whether or not the overtime

6   was paid in accordance with the law.

7           The judge is going to instruct you on what -- on

8   weighing the evidence for purposes of determining whether he

9   has met his burden.

10          The judge is gonna tell you to use your common sense.

11  Use your common sense.  You heard the testimony.  You saw the

12  records.  You're gonna get to bring the records back with you

13  and take a look at them.  Use your common sense.  That's what

14  the judge is gonna tell you.

15          He's also going to talk to you about credibility of

16  the witnesses.  You heard from four witnesses this week.  You

17  heard from the plaintiff, Roger Andreu; you heard from the

18  defendant, Russell Mackie; and you heard from a representative

19  of Waste Pro of Florida, Regina Lombardo; and then you heard

20  from the attorney for Waste Pro.  Four witnesses that you have

21  to judge the credibility of.

22          And in deciding the credibility, the judge is gonna

23  suggest that you ask yourself a few questions.

24          Did the witness impress you as one who was telling the

25  truth?  Ask yourself, did he tell you the truth?  Did he

CLOSING ARGUMENT - TINGLEY

1   impress you as someone that was telling the truth?  This was a

2   man that got on the stand, and he said to you, Two out of three

3   times I wasn't paid my bonus pay.  I wasn't paid it.

4          And yet, time after time -- and you'll be able to see

5   this when you bring these documents back -- all these time

6   cards approved by Roger Andreu, approved by Roger Andreu,

7   approved by Roger Andreu, throughout this three years,

8   approved, approved, approved, approved.  He told you that the

9   bonus payments showed up on there, approved, approved,

10  approved.

11         Is he someone that's telling the truth?  Ask yourself

12  that question.

13         The judge is gonna also suggest that you ask yourself:

14  Did the witness have any particular reason not to tell the

15  truth?  You heard this week that Mr. Andreu is a guy who's

16  wanting to make up some money.  Does he have a reason to not

17  tell you the truth?

18         Does this witness have a personal interest in the

19  outcome of the case?  Does he?  Ask yourself that.  This was

20  his claim.  This was his case.  He brought this lawsuit.  And

21  time after time and time after time, he did not tell the truth.

22  In fact, he told you that he didn't even sue Russell Mackie.

23  He said, No, I think he's here just as a witness.  Was that

24  true?  You'll see the verdict form, and it says Roger

25  Andreu vs. Waste Pro of Florida and Russell Mackie.  Was he

CLOSING ARGUMENT - TINGLEY

1   telling you the truth then?

2          Did the witness seem to have a good memory?  Ask

3   yourself that question.  It came out in his testimony that last

4   August, when I asked him if he had any recollection of what

5   happened for that 3.3 hours in September of 2016, and he said,

6   I have no idea.  But somehow, by the time he gets to the stand,

7   he remembers that in 3.3 hours, he could run an entire

8   residential route in Coral Springs.  Was he telling the truth?

9   Ask yourself.

10          Did the witness have an opportunity and ability to

11  accurately observe the things he or she testified about?  I

12  would submit to you that this question goes more to the

13  testimony of Russell Mackie.  Do you remember when counsel for

14  Roger Andreu kept showing him pay statements and saying, Hey,

15  do you know why he got this bonus?  Do you know what this was

16  for?  Do you know what that was for?  He's like, No, I don't.

17  As he sits here, in April of 2018, he has no idea.

18          Now, go back to these time cards.  Who was in a better

19  position to understand what this was for?  Again, Roger Andreu,

20  approved, approved, approved, approved, at the moment in time.

21          You'll also notice on all these time cards, after he

22  approves it, Regina Lombardo approves it, approved, approved.

23  And yet, the questions are asked of Russell Mackie.  Maybe to

24  make it look like he's hiding something, Waste Pro's hiding

25  something?

CLOSING ARGUMENT - TINGLEY

1          When Roger Andreu was asked about all these mysterious

2   times where he worked and didn't get his help pay, he was all

3   over the board on it.  And yet he approved, approved, approved.

4          I mean he said, Well, yeah, Regina would always fix

5   it.  She would always fix it.  And you heard from Regina that

6   if someone came to her, she would investigate it with the

7   supervisor.  You heard from Russell Mackie, undisputed, he

8   never said anything to him.  And this is someone that he

9   communicated with, both on an employment basis and a personal

10  basis, talking about fantasy football.  You have Russell

11  Mackie, who grew up in the business and told you how he treats

12  his drivers.  He knows they're the lifeblood of the company.

13  He wants them to be happy.  That's what he told you.  He said

14  he has an anonymous lockbox next to the time clock, and he has

15  the only key.  He said that he gives his cell phone number to

16  every driver, every helper.  They all have it.  And it's posted

17  at every facility.

18          Do you believe that Roger Andreu time after time, two

19  out of three times, he didn't get his bonus pay?  Do you

20  believe him that he never said anything?  What did he say?  He

21  said in the text message to Russell Mackie, Thank you for

22  everything.  He never said, The system's rigged against me,

23  can't get ahead, nothing like that.

24          Number 6, did the witness appear to understand the

25  questions clearly and answer them directly?  You observed the

CLOSING ARGUMENT - TINGLEY

1    testimony of Roger Andreu.  You heard him.  At first, he said

2    he was an exemplary employee, followed all the policies.  Next

3    thing you know, he says, No, I cut corners, didn't do my 1098s,

4    didn't do my pretrip, didn't do my post-trip.  I would ask

5    questions of him, and he would just change his answers and say,

6    Absolutely, absolutely, Regina would always fix it.  But then

7    later would come back and say no.

8         You saw him testify that he would get a half day if he

9    worked after -- if he clocked out before 11:30 in the morning.

10   And then when I showed him example and example and example, and

11   he goes, Oh, no, now it's 4.1, that's the time.

12        And then I showed him the example -- two examples,

13   both on 7-10-2016 and June 6, 2016, where he was paid a full

14   day rate for working 4.02 hours.  That's less than 4.1, and he

15   got his full day rate.  So, then it changed again.  Oh, it has

16   to be four hours and one minute.

17        You have to decide who you believe in this case.  Do

18   you believe the man that brought this lawsuit?

19        The last question:  Did the witness's testimony differ

20   from other testimony or other evidence?  His testimony did.

21   His testimony did.  You saw the documents.  You heard him admit

22   that he said different things in the deposition than he said

23   here.

24        The judge is going to instruct you to ask yourself

25   whether there was evidence that a witness testified falsely

CLOSING ARGUMENT - TINGLEY

1   about an important fact.  It says in there that you can

2   consider the fact that the witness has been convicted of a

3   felony or a crime involving dishonesty or a false statement.  I

4   would submit to you that that doesn't even matter.  You never

5   even have to use that, because you can rely simply on his

6   misstatements here at trial.

7          Documents don't lie.  His approvals week after week

8   after week after week, that was Roger Andreu.  He was the one

9   approving it.  Documents don't lie.

10         Counsel for Mr. Andreu talked to you about the day

11  rate and suggested to you that somehow the two half days that

12  he claims were paid, you had the Easter Sunday day and then the

13  other day where he worked -- Mr. Andreu worked 3.3 hours, that

14  somehow that negates use of the day rate.

15         The judge is gonna actually instruct you on the law.

16  And the judge is gonna say that the plaintiff, Mr. Andreu,

17  claims that Waste Pro and Russell Mackie intended to pay him

18  for only an eight-hour day and not to pay him a day rate.  The

19  judge is never going to instruct you that if there's a policy,

20  any of these things, policies, that that changes the nature of

21  what the plaintiff's claim is.  He's gonna tell you what the

22  plaintiff's claim is.  And it says that the defendants claim

23  that they paid him a day rate, regardless of the number of

24  hours he worked each day.

25         This is the crux of the case.  Is he entitled to half

CLOSING ARGUMENT - TINGLEY

1  of the hours -- as you heard from the attorney, the reason why

2  you're entitled to half is because your day rate or job rate

3  encompasses your full first time for those hours.  So, in a

4  ten-hour day, if you had $140, that $14 an hour, that is your

5  regular rate for each of those hours.  And that's why if some

6  of those hours are overtime, entitled to an overtime premium,

7  you only get a half rate, because you've already been given

8  your full first rate, your time.

9          In discussing instruction 9, counsel for Mr. Andreu

10 left out a couple of important points.  But you're gonna have

11 to rely on what the judge tells you and the evidence you heard,

12 not on what we say.

13         The judge is gonna tell you that it's a day and a job

14 rate.  So, you can have days where you get a day rate, and then

15 you could have two days in three years where you get a job

16 rate, because you're sent to go pick up a truck, or you're sent

17 to go fix something, or some other task that's going to be

18 less.  And under the law, you're entitled to half day pay for

19 the hours in excess of 40 if you're under the day or job rate.

20         The judge is gonna tell you that if the employee's

21 wage is not increased or decreased based on the number of

22 hours, the employee is earning a day or a job rate.

23         I mean common sense.  Easter Sunday was 2.33 hours,

24 and he got half of the daily rate.  He didn't get paid by the

25 hour.  He got that rate regardless.  He didn't have to work up

CLOSING ARGUMENT - TINGLEY

1    to four hours to get it.  He got that rate.

2          You saw example over example over example of Roger

3    Andreu getting paid for less than eight hours.  You saw two

4    instances of him getting paid for a specific job for that job.

5    That does not negate the day or job rate and Waste Pro's

6    ability to pay him his premium, his overtime premium at half of

7    the rate.

8          Importantly, the law does not require that the

9    employer and employee have a mutual understanding concerning

10   the rate of pay.  All that is required is that the employee be,

11   in fact, paid at a job or day rate.  That's it.

12         So, all of these questions about, did he know when he

13   was put putting fuel in the vehicle whether that was in the day

14   rate, not in the day rate?  I submit to you that was all smoke

15   and mirrors.  Just like an office worker, do they know that if

16   the copy machine is out of paper, and they have to put paper in

17   it, that that's covered in their compensation?  It's part of

18   the job.  Part of the day.

19         In fact, Roger Andreu told you, it's self-evident that

20   all the things you do before you get to that route, start

21   picking up trash, and leave that route, all of the other

22   things, taking it to the landfill, waiting at the landfill, if

23   you have to, all -- it's self-evident -- those were his

24   words -- that those would be included.

25         Counsel for Mr. Andreu spoke now about no other form

CLOSING ARGUMENT - TINGLEY

1    of compensation for services.  And, admittedly, I would submit

2    to you I'm a bit confused.  It appears that now Roger Andreu is

3    saying, Had Waste Pro not paid me any of the bonuses, then they

4    could have paid me at a half rate, and I'd be good.  If that's

5    the case, why was he up there talking about all these bonuses

6    they didn't pay him?  It says "other form of compensation for

7    services."  Form of compensation for services.  Not one

8    witness, document, anything, this week, said that bonus

9    payments were a form of compensation for services.

10        In fact, you saw the audit report, you heard from the

11   attorney.  He said, Yeah, bonuses, you can put them in.  You

12   heard from him that these were day rate employees that received

13   bonuses.

14        The judge is gonna actually instruct you about bonus

15   payments.  And when he instructs you about it, he's not gonna

16   say that bonuses are a form of compensation for services.  He's

17   gonna say bonus payments are payments made in addition to the

18   regular earnings of an employee.  If it's promised to or paid

19   to, pursuant to any contract, agreement, or promise, it must be

20   included in the regular rate.  And that's what Regina Lombardo

21   showed you.  That's what she did.  She put the bonuses in.

22        Again, in the calculation of overtime pay, you're

23   going to be told the regular rate by its very nature must

24   reflect all payments.  Bonuses are payments.  But there has

25   never been one shred of evidence that can be used to determine

CLOSING ARGUMENT - TINGLEY

1    that now bonus payments are forms -- are other forms of

2    compensation for services, that somehow, because Waste Pro paid

3    bonuses, they have to now pay time and a half?  Use your common

4    sense.

5          Counsel for Mr. Andreu tried to shift the burden --

6    we've talked about the burden of proof -- by saying, Well, why

7    didn't Waste Pro prove that he didn't -- he wasn't entitled to

8    those bonuses?  How -- the documents prove it, because he

9    approved them.

10         Instead, Waste Pro is supposed to try and prove a

11   negative, try to figure out?  Mr. Andreu couldn't even identify

12   one day, not one day.  The only day he remembered was Easter

13   Sunday.  And back in his depo, he said Regina fixed it.

14         Counsel for Mr. Andreu, in both his opening and today,

15   talked about they put in all this money to dilute -- you know,

16   all these hours are put in because it's trying to dilute the

17   rate, so then he gets less money, and trying to prevent people

18   from getting ahead.  He represents a man that made $74,000 in

19   2016.  I think 68 or 60-something in 2015.  You saw that in the

20   records.

21         Do you believe he was employed by a company that was

22   trying to keep him from getting ahead?  Or do you believe he

23   was employed by a company that gave him a chance, took him

24   under their wing, believed him when he said that he was doing

25   his job, and that he was doing his Department of Transportation

CLOSING ARGUMENT - TINGLEY

1    required inspections and making sure that he didn't keep trash

2    in the truck overnight?

3         What do you believe?  You even heard the attorney say

4    he would go to barbecues for the drivers.  Is this a company

5    that would try and stop him from getting ahead?

6         When he resigned, you recall he told you, they paid

7    him from his vacation bank and gave him two weeks' severance

8    pay, when he quit.  Is that a company that's trying to keep him

9    from getting ahead?  Ask yourself that.

10        The other confusing part about this whole thing about

11   diluting by adding hours, what he's failing to tell you is, the

12   hours of overtime would continue to go up.  So, if he's getting

13   more hours, yes, the premium on top of his day rate may go

14   down, but the number of hours of overtime is going up.

15        Mr. Andreu is trying to convince you that Mr. Mackie

16   and Waste Pro somehow put together some sort of scheme designed

17   to keep him from getting ahead.  And I would submit to you that

18   based on the records that you saw and the testimony you heard,

19   that's simply not the case.

20        **THE COURT:**  Five minutes, Ms. Tingley.

21        **MS. TINGLEY:**  Thank you, your Honor.

22        As to these bonus payments for purposes of determining

23   whether Waste Pro and Mr. Mackie complied with the Fair Labor

24   Standards Act, counsel said that the rule prohibits it.  Does

25   it?

CLOSING ARGUMENT - TINGLEY

1      You heard from the attorney from Ford and Harrison.

2   You heard from him.  He never said that.  He actually, in his

3   report -- overtime wages for day rate employees should be

4   calculated by first calculating the regular rate, by taking the

5   gross wages earned in a workweek, including bonuses

6   attributable to the workweek.

7      He said later he went back to Waste Pro, and he

8   personally observed that they followed his advice.  And he says

9   here that day rate employees can get bonuses.  Where is the

10  evidence that this rule precludes it?  It's because of this,

11  now all of a sudden, he's saying, Wait, I didn't get my

12  bonuses, but if I got my bonuses, that means I -- if I got

13  bonuses, then I get time and a half.  What does he want?  Does

14  he want his bonuses and his time and a half?

15      This is the Fair Labor Standards Act.  Is that fair?

16      When we started this case, you were told by counsel

17  for Mr. Andreu that the house always wins.  Waste Pro of

18  Florida and Russell Mackie have denied that they paid him

19  improperly.  And to them, this is not a casino.  This is a

20  business that they have run to the best of their ability and

21  believing in compliance with the law.  You heard that they

22  hired this law firm and paid a quarter of a million dollars to

23  them for a top down audit -- are we doing everything correctly?

24      He said it was probably the most expansive audit he

25  had done in his career.  And the results came just at the time

CLOSING ARGUMENT - TINGLEY

1    that Roger Andreu started.  Is this a company that's trying to

2    keep people from getting ahead?  Or is this a company that

3    says, Hey, are we doing this right?  Tell us, because we'll fix

4    it.  They did that as a proactive measure.

5         This was not an attorney that was brought in just for

6    this case.  He wasn't even paid to come here.  But he was paid

7    to tell you that I looked at these records, including this

8    region.  And with the exception of making sure the bonuses were

9    in the correct workweek, I found they complied.  And as you saw

10   from Regina Lombardo, when she did the calculation, she put the

11   bonuses in the correct workweek.

12        This is not a case where Roger Andreu takes issue with

13   the actual formula.  He simply says, I need time and a half.  I

14   need time and a half.

15        **THE COURT:**  Ms. Tingley, your time's elapsed, if you

16   want to conclude your argument.

17        **MS. TINGLEY:**  Yes.  Thank you.

18        Mr. Andreu has the burden in this case.  He has the

19   burden to show that Waste Pro is liable and Russell Mackie

20   are *(sic)* liable, both of them, defendants, plural, both of

21   them.

22        And he also has the burden of showing that there's

23   actual damage.  You saw the verdict form.  And I would submit

24   to you that the answer to the first question on the verdict

25   form is that these defendants are not liable, because they did

CLOSING ARGUMENT - EDWARDS

1    pay him in accordance with the law.  And I would also submit to

2    you that even if you think that maybe on one occasion, two

3    occasions, he has not established a dime of damage.  But you

4    never get to that, because Waste Pro did right.  They could

5    rely on their attorney, and they did, and how he interpreted

6    the regulations.

7            And for that reason, on behalf of Waste Pro of Florida

8    and Russell Mackie, I ask that you return a verdict finding

9    that they are not liable, because they properly paid Roger

10   Andreu the overtime he was due under the Fair Labor Standards

11   Act.

12           Thank you.

13           **THE COURT:**  Mr. Edwards.

14           **MR. EDWARDS:**  Ladies and gentlemen, I can tell you

15   what Mr. Andreu wants.  Mr. Andreu wants Waste Pro to do what

16   they said they'd do.  He wants consistency.  He wants fairness.

17   He wants accountability.  The same thing that they asked of

18   him.  The same thing that they had policies in place to ensure

19   that he logged his time, that he called in to his supervisors.

20   They demand accountability from their employees, but when their

21   employees demand accountability from them, this is what they

22   have to do to get it.  They have to come to court.

23           Ms. Tingley talked to you about common sense, and I'll

24   echo that.  You are asked to use your common sense in

25   evaluating the issues that have been presented to you, in

CLOSING ARGUMENT - EDWARDS

1    evaluating the evidence that you've seen at this trial.  Use

2    your common sense.

3          Does the regional vice president of Waste Pro, the

4    youngest regional vice president in the history of the company,

5    does he really not know why any of this is happening, why

6    they're allowed to pay the way that they think they're allowed

7    to pay?

8          He told you that he didn't remember being interviewed

9    for that audit, but you heard that the attorney believed that

10   he did interview him.

11         It's because the way Waste Pro's policies are, is that

12   sometimes you have to comply with them, sometimes maybe you

13   don't.

14         Mr. Andreu was candid with you and honest with you

15   when he took that stand, and he told you, Yes, there's

16   occasions that I didn't dump my truck; yes, there's occasions

17   that I didn't refuel at the end of a shift; yes, there's

18   occasions that I didn't do my driver forms that I have to do.

19   That's because he's being candid with you.  And Waste Pro

20   doesn't catch that.  They don't catch it, because they don't

21   have policies in place to catch it.  They don't have policies

22   in place to catch mistakes that affect people and things.

23         In regards to Mr. Andreu and his acknowledgment or

24   signing off on his time sheets, he told you why that was.  He

25   told you that this isn't a formal situation.  We're not

CLOSING ARGUMENT - EDWARDS

1    entering into a negotiation where somebody tells me they're

2    going to offer me this, and I'll take that for this amount of

3    time.  This is knock-around guys.  They're calling each other

4    on the phones from alleys where they're picking up the garbage,

5    and they're saying, Hey, man, I'm gonna give you another $50 if

6    you run that errand for me, even if that errand takes you

7    another five, six hours.  He told you after a while, you just

8    say it is what it is, and you keep on going.

9         I'll also remind you that at the close of evidence,

10   Mr. Mackie did tell you that there is an open-door policy.  But

11   he also told you that he shouldn't have to have one.  He

12   shouldn't have to have an open-door policy.  This information

13   should be caught.  There shouldn't be a reason for Mr. Andreu

14   to go to the regional vice president of the company and ask for

15   the pay that he was promised by somebody else in the company.

16        The reason we have not talked to you about damages is

17   because damages is an issue for you to determine.  You

18   determine damages in an FLSA case like this.  If you find that

19   Mr. Andreu has proven to you that it is more likely than not

20   that he wasn't paid properly under the FLSA, that Waste Pro did

21   not pay a legal day rate that allows them to calculate overtime

22   in the manner that they're trying to, that they paid him

23   additional compensation for services that Mr. Mackie admitted

24   to on the stand in his own words, or that the way that he was

25   paid was not actually a flat rate regardless of the number of

CLOSING ARGUMENT - EDWARDS

1   hours.  It has to be in order for them to calculate the

2   payments that way.

3          What you'll be asked to determine -- and the way

4   you'll be asked to determine the damages, is to take the total

5   amount of pay, and the total amount of time that you think he

6   was paid and that pay was to compensate him for.  So, if you

7   find that it's a 40-hour workweek, you can find it's a 40-hour

8   workweek.  If you find that it's an eight-hour workday on a

9   six-day workweek, you can find that it's a 48-hour workweek.

10  That's all within your power.

11         He has to show you that those damages are there,

12  because they didn't pay in accordance with the day rate.  And

13  if they don't pay in accordance with the day rate, we go back

14  to what the FLSA requires.  And it requires overtime to be paid

15  at time and a half for all overtime hours.  There is a basis

16  for you to find that even if it wasn't a 48-hour workweek, he's

17  still owed damages on that basis.

18         I want to talk to you about the audit report that you

19  heard about.  The defendants will show you that audit report,

20  or at least the part of it that you're allowed to see, and

21  they'll tell you that that's evidence that they sought advice

22  of an attorney, and that that attorney told them the right

23  thing to do.

24         They did seek the advice of an attorney.  I don't

25  dispute his qualifications.  But they paid him a quarter

1    million dollars to write that report.  And now he has to come

2    to court and sit on the stand and testify about the findings.

3    That's why his testimony is the way it is.  That's their

4    lawyer.  He told you that he represents employees -- or

5    employers, big businesses.  He doesn't represent employees like

6    Mr. Andreu.

7           He told you that when he was doing that audit, it was

8    a top down audit, and it was comprehensive.  But he also told

9    you that it was a comprehensive audit for Waste Pro of USA, and

10   that there was 200 records evaluated from seven regions across

11   the United States.  That's not a comprehensive audit of the men

12   and women who are employed in Mr. Andreu's job.

13          That's not only a basis for you to find that they

14   didn't act in good faith, that's a basis for you to find that

15   their noncompliance is willful, because it can include reckless

16   disregard for whether or not their conduct was prohibited by

17   the FLSA.

18          What they did is, they went to the doctor, but they

19   didn't tell the doctor all the symptoms they were experiencing.

20   And sometimes that happens because you don't want to hear it.

21   Sometimes, maybe in the case of Waste Pro, that happens because

22   you don't want it put in writing.

23          **THE COURT:**  Three minutes, Mr. Edwards.

24          **MR. EDWARDS:**  Thank you, your Honor.

25          When you're asked to calculate damages in a case like

CLOSING ARGUMENT - EDWARDS

1    this, that decision is yours.  You'll ask:  What is the total

2    amount of compensation in a week, and what do I think was the

3    total amount of time that the pay was intended to compensate

4    this employee for?  You divide that number into the total pay.

5    You multiply that by one-and-a-half to get his overtime.  You

6    multiply his overtime by the amount of overtime hours that he

7    worked, and then you take away what they paid him, and you're

8    left with what they should have paid him.  Those are his

9    damages.

10        Again, my words are not evidence.  But I'll submit to

11   you that if you do those calculations, you'll see that due to

12   the number, the massive number of overtime hours that were

13   worked by Mr. Andreu, that he is owed tens of thousands of

14   dollars.

15        In wrapping up, Judge Dimitrouleas spoke at the

16   beginning of this case and said that it is the responsibility

17   of jurors to follow the law, not to change the law.  And I

18   agree with that.  I would never ask you to change the law.

19   While we can't change the law, we can have an effect on

20   policies.  That's what this case is about.  It's not about

21   people; it's about policies.

22        Ms. Tingley told you that the biggest magic trick is

23   when your waste is gone from the side of the road when you wake

24   up in the morning.  That's not a magic trick.  That's a result

25   of hard work.  The magic trick is the slight of hand that has

CLOSING ARGUMENT - EDWARDS

1    been executed against guys like Roger about their overtime pay,

2    and the way it's calculated, and what allows companies like

3    this to do this.

4         I would ask you, on behalf of Mr. Andreu, to return

5    him a verdict that is consistent with the facts of this case

6    through the evidence that you have seen and will be able to

7    take with you and look through for yourself.  And that is that

8    he has proven to you that it is more likely than not that he

9    was not paid appropriately under the FLSA; that the day rate

10   does not apply to him for the reasons we've discussed at

11   length; the half days, it's not based on one flat rate

12   regardless of the numbers of hours worked; the additional

13   compensation for additional work; and to calculate him damages

14   in the amount that you see fit.

15        And it is okay, based on the records that you've seen

16   in this case, for that to be an approximation.  It's not

17   required to be perfect.  No one's gonna check your work.  You

18   are the judges of the fact of this case.

19        And I would also ask you to return a verdict that the

20   conduct of Waste Pro in missing this, in not reporting this,

21   when they had the opportunity to have this checked out and

22   vetted and see if this is okay, was a reckless disregard for

23   whether or not their conduct would be prohibited under the

24   FLSA.  And that they did willfully violate the FLSA.  Because

25   that's what's supported by the law that governs this case and

JURY CHARGE

1    the facts that have come out before you in evidence.

2          Thank you.

3          **THE COURT:**  All right.  Members of the jury, it's my

4    duty to instruct you on the rules of law that you must use in

5    deciding this case.  When I have finished, you will go to the

6    jury room and begin your discussions, sometimes called

7    "deliberations."

8          Your decision must be based only on the evidence

9    presented here.  You must not be influenced in any way by

10   either sympathy for or prejudice against anyone.

11         You must follow the law as I explain it, even if you

12   do not agree with the law.  And you must follow all of my

13   instructions as a whole.  You must not single out or disregard

14   any of the instructions on the law.

15         The fact that a corporation is involved as a party

16   must not affect your decision in any way.  A corporation and

17   all other persons stand equal before the law and must be dealt

18   with as equals in a court of justice.  When a corporation is

19   involved, of course, it may act only through people as its

20   employees.  And, in general, a corporation is responsible under

21   the law for the acts and statements of its employees that are

22   made within the scope of their duties as employees of the

23   company.

24         As I said before, you must consider only the evidence

25   that I have admitted in the case.  Evidence includes the

Case 0:17-cv-60926-WPD Document 144 Entered on FLSD Docket 05/17/2018 Page 39 of 64

JURY CHARGE

1    testimony of witnesses and the exhibits admitted.  But anything

2    the lawyers say is not evidence and isn't binding on you.

3          You shouldn't assume from anything I've said that I

4    have any opinion about any factual issue in this case.  Except

5    for my instructions to you on the law, you should disregard

6    anything I may have said during the trial in arriving at your

7    own decision about the facts.

8          Your own recollection and interpretation of the

9    evidence is what matters.

10         In considering the evidence, you may use reasoning and

11   common sense to make deductions and reach conclusions.  You

12   shouldn't be concerned about whether the evidence is direct or

13   circumstantial.

14         "Direct evidence" is the testimony of a person who

15   asserts that he or she has actual knowledge of a fact, such as

16   an eyewitness.  "Circumstantial evidence" is proof of a chain

17   of facts and circumstances that tend to prove or disprove a

18   fact.  There is no legal difference in the weight you may give

19   to either direct or circumstantial evidence.

20         When I say you must consider all the evidence, I don't

21   mean that you must accept all the evidence as true or accurate.

22   You should decide whether you believe what each witness had to

23   say and how important that testimony was.  In making that

24   decision, you may believe or disbelieve any witness, in whole

25   or in part.  The number of witnesses testifying concerning a

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(954)769-5657

1    particular point doesn't necessarily matter.

2            To decide whether you believe any witness, I suggest

3    that you ask yourself a few questions:

4            One, did the witness impress you as one who was

5    telling the truth?

6            Two, did the witness have any particular reason not to

7    tell the truth?

8            Three, did the witness have a personal interest in the

9    outcome of the case?

10           Four, did the witness seem to have a good memory?

11           Five, did the witness have the opportunity and ability

12   to accurately observe the things he or she testified about?

13           Six, did the witness appear to understand the

14   questions clearly and answer them directly?

15           Seven, did the witness's testimony differ from other

16   testimony or other evidence?

17           You should also ask yourself whether there was

18   evidence that a witness testified falsely about an important

19   fact.  And ask whether there was evidence that at some other

20   time a witness said or did something, or didn't say or do

21   something, that was different from the testimony the witness

22   gave during this trial.

23           To decide whether you believe a witness, you may

24   consider the fact that the witness has been convicted of a

25   felony or a crime involving dishonesty or a false statement.

JURY CHARGE

1          But keep in mind that a simple mistake doesn't mean a

2   witness wasn't telling the truth as he or she remembers it.

3   People naturally tend to forget some things or remember them

4   inaccurately.  So, if a witness misstated something, you must

5   decide whether it was because of an innocent lapse in memory or

6   an intentional deception.  The significance of your decision

7   may depend on whether the misstatement is about an important

8   fact or about an unimportant detail.

9          In this case, it's the responsibility of the plaintiff

10  to prove every essential part of his claim by a "preponderance

11  of the evidence."  This is sometimes called the "burden of

12  proof" or the "burden of persuasion."

13         A "preponderance of the evidence" simply means an

14  amount of evidence that is enough to persuade you that the

15  plaintiff's claim is more likely true than not true.

16         If the proof fails to establish any essential part of

17  a claim or contention by a preponderance of the evidence, you

18  should find against the plaintiff.

19         In deciding whether any fact has been proved by a

20  preponderance of the evidence, you may consider the testimony

21  of all the witnesses, regardless of who may have called them,

22  and all of the exhibits received in evidence, regardless of who

23  may have produced them.

24         If the proof fails to establish any essential part of

25  the plaintiff's claim by a preponderance of the evidence, you

JURY CHARGE

1   should find for the defendants as to that claim.

2        In this case, Waste Pro of Florida, Inc., and Russell

3   Mackie assert the affirmative defense of good faith reliance on

4   an administrative regulation, order, ruling, approval, or

5   interpretation of an agency of the United States, or an

6   administrative practice or enforcement policy of an agency of

7   the United States.

8        Specifically, defendants contend that they relied upon

9   guidance of the United States Department of Labor regarding the

10  overtime calculations performed by defendants and the overtime

11  payment method used to compensate plaintiff.

12       Defendants carry the burden of proving, by a

13  preponderance of the evidence, that they relied in good faith

14  on guidance provided by the United States Department of Labor,

15  or another agency of the United States, in their calculation of

16  plaintiff's overtime compensation.

17       You've been permitted to take notes during the trial.

18  Most of you -- perhaps all of you -- have taken advantage of

19  that opportunity.  You must use your notes only as a memory aid

20  during deliberations.  You must not give your notes priority

21  over your independent recollection of the evidence.  And you

22  must not allow yourself to be unduly influenced by the notes of

23  other jurors.

24       I emphasize that notes are not entitled to any greater

25  weight than your memories or impressions about the testimony.

JURY CHARGE

1          In this case, plaintiff claims that defendants did not

2     pay plaintiff the overtime pay required by the federal Fair

3     Labor Standards Act, also known as the FLSA.

4          To succeed on his claim against defendants, plaintiff

5     must prove each of the following facts by a preponderance of

6     the evidence:

7          First, plaintiff was an employee of defendants and was

8     employed by an enterprise engaged in commerce; and, second,

9     defendants failed to pay plaintiff the overtime pay required by

10    law.

11         In the verdict form I will explain in a moment, you'll

12    be asked to answer questions about these factual issues.

13         The parties have stipulated that plaintiff was an

14    employee of defendants and was employed by an enterprise

15    engaged in commerce.  The parties have also stipulated that

16    plaintiff worked more than 40 hours per week while employed by

17    defendants.

18         The law allows employers to pay employees on an hourly

19    rate basis, day rate, job rate, or other basis, if certain

20    requirements are met.

21         The parties dispute whether defendants intended to pay

22    plaintiff on an hourly basis or a day rate regardless of the

23    number of hours worked in a day.  Plaintiff claims that

24    defendants intended to pay plaintiff only for an eight-hour

25    workday and not to pay plaintiff a day rate.  Defendants claim

JURY CHARGE

1    that they paid plaintiff a day rate, regardless of the number

2    of hours plaintiff worked each day.

3          Whether plaintiff was to be paid half time pay for all

4    hours worked in excess of 40 in the workweek or whether

5    plaintiff was to be paid one-and-a-half time pay for all hours

6    worked in excess of 40 in the workweek is determined by you --

7    by whether you decide that plaintiff was paid for an eight-hour

8    workday or whether plaintiff was paid a day/job rate.

9          Under the law, an employee earns a day/job rate if he

10   receives a flat sum for a day's work or for doing a particular

11   job, regardless of the number of hours he works in the day or

12   at the job, and receives no other form of compensation for

13   services.

14         In other words, if the employee's wage is not

15   increased or decreased by the number of hours he works, the

16   employee is earning a day or job rate.  If the rate changes

17   based on the number of hours worked, it is not a day or job

18   rate.  The law does not require that the employer and employee

19   have a mutual understanding concerning the rate of pay.  All

20   that is required is that the employee be, in fact, paid a day

21   or job rate.

22         If you find that the plaintiff was paid a flat sum for

23   a day's work or for doing a particular job, without regard to

24   the number of hours worked in the day or at the job, then

25   plaintiff is entitled to half-time pay for all hours worked in

JURY CHARGE

1   excess of 40 in the workweek.

2          On the other hand, if you find that plaintiff was paid

3   for an eight-hour workday, then the FLSA requires an employer

4   to pay an employee at least one-and-a-half times the employee's

5   "regular rate" for the time worked over 40 hours in a workweek.

6   This is commonly known as time-and-a-half pay for overtime

7   work.

8          Under the hourly pay compensation method, if an

9   employee works more than 40 hours in one workweek, the employer

10  must pay the employee the overtime rate of one-and-a-half times

11  the regular rate for all time worked after the first 40 hours.

12         The employee's "regular rate" for one week is the

13  basis for calculating any overtime pay due to the employee.

14  The regular rate of pay is the hourly rate actually paid to the

15  employee for the normal, nonovertime workweek for which he is

16  employed.  The regular rate by its very nature must reflect all

17  payments which the parties have agreed shall be received

18  regularly during the workweek, exclusive of overtime payments.

19  If an employee in a single workweek works at two or more

20  different types of work for which different overtime *(sic)*

21  rates of pay have been established, his regular rate for that

22  week is the weighted average of such rates.

23         To calculate how much overtime pay was owed to

24  plaintiff for a certain week, subtract 40 from the total number

25  of hours he worked and multiply the difference by the

JURY CHARGE

1   appropriate overtime rate.  Defendants failed to pay Roger

2   Andreu the required overtime pay if defendants paid him less

3   than that amount.

4         The amount of damages is the difference between the

5   amount Roger Andreu should have been paid and the amount he was

6   actually paid.  Roger Andreu is entitled to recover lost wages

7   from the date of your verdict back to no more than two years

8   before he filed this lawsuit on May 9th, 2017 -- unless you

9   find that the employer knew or showed reckless disregard for

10  whether the FLSA prohibited its conduct.  If you find that the

11  employer knew or showed reckless disregard for whether the FLSA

12  prohibited its conduct, then Roger Andreu is entitled to

13  recover lost wages from the date of your verdict back to no

14  more than three years before he filed this lawsuit.

15        Bonus payments are payments made in addition to the

16  regular earnings of an employee.  If a bonus is promised to or

17  paid to an employee pursuant to any prior contract, agreement,

18  or promise, it must be included in the regular rate.

19        Under the law, all workweeks stand alone.  That means

20  that it is necessary for you to determine the hours worked by

21  the plaintiff on a week-by-week basis in determining whether he

22  worked more than 40 hours in any single workweek.  The law does

23  not permit the averaging of hours worked among workweeks.  You

24  cannot reduce the number of overtime hours you find the

25  plaintiff worked by hours not worked by the plaintiff in other

JURY CHARGE

1   weeks.

2          It's the employer's responsibility of keeping records

3   of hours worked by employees under the Fair Labor Standards

4   Act.  Where the employer's records of work time are inaccurate

5   or completely missing, and the employee cannot offer convincing

6   substitutes, the employee has carried out his burden if he

7   proves that he has, in fact, performed work for which he has

8   been improperly compensated and if he produces sufficient

9   evidence to show the amount and extent of that work as a matter

10  of just and reasonable inference.

11         The burden then shifts to the employer to come forward

12  with evidence of the precise amount of work performed or with

13  evidence to negate the reasonableness of the inference to be

14  drawn from the employee's evidence.  If the employer fails to

15  produce such evidence, the employee may then be awarded

16  damages, even though the result is only approximate.

17         Under the FLSA, "willfulness" means that the

18  defendants either knew or showed reckless disregard for the

19  matter of whether their conduct was prohibited by the FLSA.  In

20  common usage, the word "willful" is considered synonymous with

21  such words as "voluntary," "deliberate," and "intentional."  In

22  law, mere negligence is insufficient to support a finding of

23  willfulness.

24         The good-faith defense under the FLSA is an objective

25  test that bars actions for violations of the minimum wage or

JURY CHARGE

1   overtime compensation provisions of the FLSA if the employer

2   proves that the act or omission complained of was, one, taken

3   in good faith; and, two, was in conformity with; and, three, in

4   reliance on a written administrative interpretation by a

5   designated agency.

6          The agency designated to provide interpretations of

7   the FLSA is the administrator of the Wage and Hour Division of

8   the Department of Labor.  Where an administrative

9   interpretation is insufficient to allow objective reliance, the

10  reliance prong of this test cannot be met; an employer's actual

11  reliance upon his own incorrect interpretation of a vague and

12  general administrative guideline will not suffice.

13         An individual employee's right to overtime pay cannot

14  be abridged or otherwise waived by the employee.

15         Of course, the fact that I've given you instructions

16  concerning the issue of plaintiff's damages should not be

17  interpreted in any way as an indication that I believe that the

18  plaintiff should, or should not, prevail in this case.

19         Your verdict must be unanimous -- in other words, you

20  must all agree.  Your deliberations are secret.  You'll never

21  have to explain your verdict to anyone.

22         Each of you must decide the case for yourself, but

23  only after fully considering the evidence with the other

24  jurors.  So, you must discuss the case with one another and try

25  to reach an agreement.  While you're discussing the case, don't

JURY CHARGE

```
 1    hesitate to re-examine your own opinion and change your mind if
 2    you become convinced that you were wrong.  But don't give up
 3    your honest beliefs just because others think differently or
 4    because you simply want to get the case over with.
 5              Remember that, in a very real way, you're judges --
 6    judges of the facts.  Your only interest is to seek the truth
 7    from the evidence in the case.
 8              When you go to the jury room, choose one of your
 9    members to act as a foreperson.  The foreperson will direct
10    your verdict and -- will direct your deliberations and speak
11    for you here in court.
12              A verdict form has been prepared for your convenience.
13    And there are different questions that depending on whether you
14    answer yes or no, that you continue to answer additional
15    questions or that you fill in amounts.
16              And there's lines for the foreperson to sign and date
17    the verdict form when all of you have agreed on a verdict in
18    this case.  Take the verdict form with you to the jury room.
19    When you've all agreed on the verdict, your foreperson must
20    fill in the form, sign it, and date it.  Then you'll return it
21    to the courtroom.
22              If you wish to communicate with me at any time, please
23    write down your message or question and give it to the court
24    security officer.  The court security officer will bring it to
25    me, and I'll respond as promptly as possible -- either in
```

1    writing or by talking to you in the courtroom.  Please

2    understand that I may have to talk to the lawyers and the

3    parties before I respond to your question or message, so you

4    should be patient as you await my response.  But I caution you

5    not to tell me how many jurors have voted one way or the other

6    at that time.  That type of information should remain in the

7    jury room and not be shared with anyone, including me, in your

8    note or question.

9            Will counsel approach the bench sidebar?

10           *(At the bench out of the hearing of the jury)*

11       **THE COURT:**  Any exception or objection to the content

12   or the manner in which the instructions were given?

13       **MR. EDWARDS:**  No, your Honor.

14       **MS. TINGLEY:**  None beyond what was addressed

15   yesterday.

16           **THE COURT:**  Okay.  Thank you.

17           *(The foregoing proceedings were had at sidebar)*

18       **THE COURT:**  All right, members of the jury, during

19   your deliberations, I'm gonna ask that you try to minimize any

20   interruptions in your deliberations.  If someone goes outside

21   to smoke a cigarette, someone goes to the bathroom, try to

22   minimize the number of those interruptions or the duration of

23   those interruptions, because once one of you leaves the jury

24   deliberation room, you have to cease your deliberations.  You

25   can only deliberate when all eight people are in the room.

```
 1            I'm gonna send back a copy of the instructions and the
 2   verdict form.  We'll gather the evidence, and we'll send that
 3   back to you, also.
 4            And, also, we're going to take a luncheon order from
 5   you.  We'll order lunch so that lunch could be brought in, and
 6   you can have lunch and continue deliberations through lunch.
 7   And we're also going to collect your cell phones now during
 8   your deliberations.
 9            And with that, I'll ask the eight jurors to retire and
10   consider your verdict.
11            COURTROOM SECURITY OFFICER:  All rise.
12            (The jury went to the jury deliberation room to
13   deliberate upon a verdict at 11:10 a.m.)
14            THE COURT:  And are we in agreement that all the
15   evidence on the table is all the evidence that's there that's
16   supposed to be there and there's nothing there that's not
17   supposed to be there?
18            MS. TINGLEY:  Yes.  I'm just gonna put it in number
19   order.
20            MR. EDWARDS:  Looking now, but, yes.
21            THE COURT:  And if you all are gonna wander too far
22   away from the courtroom, please leave a number with the court
23   clerk where you can be reached if we have a question or a
24   verdict.  And we'll be in recess until we hear further from the
25   jury or 1:30, whichever comes first.
```

```
1              If we haven't heard from the jury, then we'll bring

2     them back in at 1:30, and I'll explain to them that I've got to

3     go to Miami, and that we're going to recess their deliberations

4     until tomorrow morning.

5              MS. TINGLEY:  Yes, your Honor.

6              MR. EDWARDS:  Understood.

7              THE COURT:  Okay.  Are we in agreement on the

8     evidence?

9              MS. TINGLEY:  Yes.

10             MR. EDWARDS:  Yes, your Honor.

11             THE COURT:  All right.  Terry, you can go ahead and

12    take the evidence back.

13             And if there's nothing else to come before the Court,

14    we'll be in recess until we hear further from the jury or 1:30,

15    whichever comes first.

16             MS. TINGLEY:  Thank you, your Honor.

17             MR. EDWARDS:  Thank you, your Honor.

18             MR. ROSENTHAL:  Thank you, your Honor.

19             COURTROOM SECURITY OFFICER:  All rise.

20             (The Judge exited the courtroom)

21             (Recess taken at 11:11 a.m. until 1:27 p.m.)

22             (The Judge entered the courtroom)

23             THE COURT:  All right.  We're back on the record.

24             Counsel are present.

25             Just as I came in, the jury sent out a note, so I'm
```

1   having the court clerk make a copy of the note for you.

2           We could try to answer the note or we can tell them

3   that we'll answer the note tomorrow.  We can tell them that

4   we're going to recess their deliberations until nine o'clock

5   tomorrow, and once all eight of them are in the room, to

6   continue their deliberations.  We can tell them that they can

7   continue their deliberations this afternoon, but if they have a

8   question or they reach a verdict, then I won't be here to take

9   it, and then they can just come back tomorrow.  So, either way,

10  they'd have to come back tomorrow.

11          Let me give you a chance to look at the three

12  questions.

13          *(Pause)*

14          **THE COURT:**  All right.  So, the three questions -- the

15  first question is:  "What does the FLSA define as regular

16  earnings as?"

17          What's the parties' position as to the response to

18  that question?

19          **MS. TINGLEY:**  Your Honor, the defense believes the

20  answer to that question should be that they should rely on

21  their recollection of the evidence and the law as instructed by

22  the Court.  It can't be answered.

23          **THE COURT:**  Mr. Edwards?

24          **MR. EDWARDS:**  Plaintiff agrees with that, your Honor.

25          **THE COURT:**  All right.  The second one:  "Under the

1   earnings statement dated September 11th through September 24th

2   of 2016, and under important notes, why is an eight-hour a day

3   hourly rate quoted?"

4        **MS. TINGLEY:**  Same response.

5        **MR. EDWARDS:**  Same response, your Honor.

6        **THE COURT:**  And the last one is:  "Can the daily rate

7   include bonuses?"

8        **MS. TINGLEY:**  Same response.

9        **MR. EDWARDS:**  Same response, your Honor.

10       **THE COURT:**  All right.  So, I'll bring them out, I'll

11   answer the three questions.  Then do I send them home until

12   tomorrow morning at nine o'clock, or do I give them the option

13   to continue deliberating, if all eight of them want to continue

14   deliberating, for as long as they want, realizing that if they

15   reach a verdict or have a question, then I won't be here to

16   respond to it, and either way they got to come back?

17       **MS. TINGLEY:**  The defense would prefer if you give

18   them the option.

19       **MR. EDWARDS:**  Same here, your Honor.

20       **THE COURT:**  Okay.  Let's bring out the jury.

21       **COURTROOM SECURITY OFFICER:**  All rise.

22       *(The jury entered the courtroom)*

23       **THE COURT:**  All right.  We have all the jury back.

24       Mr. Moreno, are you the foreman of the jury?

25       **JUROR NO. 1:**  Yes, your Honor.

1          **THE COURT:**  Okay.  You can have a seat.

2          I've got three questions from you.

3          "Why does the FLSA define as -- what does the FLSA

4    define as regular earnings?"

5          "Under the earnings statement dated September 11th

6    through September 24th of 2016, and under important notes, why

7    is an eight-hour a day hourly rate quoted?"

8          Third:  "Can the daily rate include bonuses?"

9          I'm gonna have to ask you to rely on your collective

10   recollection of what the testimony was, and I've given you all

11   the law in the case.  So, at this point, I can't supplement the

12   evidence and put more evidence in.  And the lawyers and I feel

13   that the law that I've given you answers the questions as far

14   as the law goes.

15         So, with that, I would normally ask you to retire and

16   continue your deliberations, but I think I alluded to on Monday

17   that I've got to go to Miami for a judge's robing ceremony this

18   afternoon.

19         So, we can do one of two things.  We can recess the

20   deliberations until tomorrow morning at nine o'clock or you can

21   continue your deliberations this afternoon, as long as all

22   eight of you want to continue to work on the case, with the

23   understanding that I won't be here to answer any questions or

24   to receive a verdict, if you reach a verdict, so that you'd

25   have to come back tomorrow morning at nine o'clock anyway.

```
 1              So, it's up to you whether you want to recess now and
 2      come back tomorrow at nine o'clock, or whether all eight of you
 3      want to continue your deliberations to get more work done this
 4      afternoon and come back tomorrow at nine o'clock.  And, again,
 5      it has to be unanimous.  So, if one of you wants to leave now,
 6      then we would recess for the afternoon and come back tomorrow
 7      at nine.
 8              So, with that in mind, is there anyone that wants to
 9      or has to leave now, raise your hand.
10              All right.  So, go ahead and continue deliberations,
11      as long as all eight of you want to continue.  You can
12      deliberate till like five.  At five o'clock, I'm gonna ask that
13      you go ahead and recess, and we'll see you back tomorrow
14      morning at nine o'clock.
15              Even if all eight of you were to go to dinner tonight
16      or go to breakfast tomorrow, you can't discuss the case unless
17      you're in the jury deliberation room.  So, once you recess this
18      afternoon, you can't talk about the case until all eight of you
19      are back in the room tomorrow morning.  Once the eighth person
20      is back in the room, you can resume your deliberations, unless
21      you have a verdict, and then we would take the verdict at
22      eight -- at nine o'clock tomorrow morning.
23              And when you do leave, we'll make sure you get your
24      cell phones back, and then we'll collect them tomorrow at
25      nine o'clock.
```

```
 1            And if you don't have any questions, we'll see
 2    everybody back tomorrow at nine o'clock.
 3            COURTROOM SECURITY OFFICER:  All rise.
 4            (The jury exited the courtroom)
 5            THE COURT:  So, I don't think the lawyers need to
 6    stick around, because I can't imagine there'd be anything that
 7    we would need you for without me being here.  So, I'll ask
 8    Donna to, you know, make sure that she lets us know tomorrow
 9    what time they left this afternoon.
10            And if there's nothing else to come before the Court,
11    we'll be in recess until nine o'clock tomorrow morning.
12            MR. EDWARDS:  Thank you, your Honor.
13            MS. TINGLEY:  Thank you.
14            (The Judge exited the courtroom)
15            (Proceedings concluded at 1:37 p.m.)
16                       -   -   -   -   -
17
18
19
20
21
22
23
24
25
```

```
 1                        INDEX

 2    CLOSING ARGUMENT                        PAGE

 3    By Mr. Edwards                          554

 4    By Ms. Tingley                          566

 5    By Mr. Edwards                          581

 6    JURY CHARGE                             588

 7                        -  -  -  -  -

 8

 9

10

11

12

13

14

15

16

17

18

19                    C E R T I F I C A T E

20     I certify that the foregoing is a correct transcript from

21     the record of proceedings in the above-entitled matter.

22

23
         /S/Francine C. Salopek             5-16-18
24     Francine C. Salopek, RMR-CRR    Date
       Official Court Reporter
25
```

**COURTROOM SECURITY OFFICER: [6]**
553/3 554/2 601/10 602/18 604/20 607/2
**JUROR NO. 1: [1]** 604/24
**MR. EDWARDS: [17]**
**MR. ROSENTHAL: [19]** 602/17
**MS. TINGLEY: [19]**
**THE COURT: [33]**

**$**
**$103.89 [1]** 561/10
**$14 [1]** 574/4
**$140 [1]** 574/4
**$207.79 [1]** 561/8
**$50 [2]** 564/20 583/5
**$74,000 [1]** 577/18

**.**
**.5 [1]** 559/10

**/**
**/S/Francine [1]** 608/23

**1**
**1.5 [1]** 559/10
**1098s [1]** 572/3
**11:10 [1]** 601/13
**11:11 [1]** 602/21
**11:30 [1]** 572/9
**11th [2]** 604/1 605/5
**13 [1]** 553/17
**14 [1]** 553/17
**16 [1]** 553/17
**16th [1]** 560/17
**17-60926-CIV-WPD [1]** 551/4
**18 [1]** 608/23
**19 [2]** 551/7 553/1
**1:27 [1]** 602/21
**1:30 [3]** 601/25 602/2 602/14
**1:37 [1]** 607/15

**2**
**2.33 hours [1]** 574/23
**200 [1]** 585/10
**2015 [1]** 577/19
**2016 [8]** 560/16 560/17 570/5 572/13 572/13
 577/19 604/2 605/6
**2017 [2]** 560/17 596/8
**2018 [3]** 551/7 553/1 570/17
**205F [1]** 552/10
**20th [1]** 552/3
**220 [1]** 552/6
**24th [2]** 604/1 605/6
**299 [1]** 552/10

**3**
**3.3 hours [3]** 570/5 570/7 573/13
**30-some-odd [1]** 561/24
**30th [1]** 560/16
**32801 [1]** 552/7
**33301 [1]** 552/10
**33304 [1]** 552/4

**4**
**4.02 hours [1]** 572/14
**4.1 [3]** 562/16 572/11 572/14
**4.1 hours [1]** 561/4
**40 [5]** 574/19 594/4 594/6 595/1 595/24
**40 hours [8]** 558/9 558/15 567/14 593/16
 595/5 595/9 595/11 596/22
**40-hour [2]** 584/7 584/7
**48-hour [2]** 584/9 584/16

**5**
**5-16-18 [1]** 608/23

**554 [1]** 608/3
**566 [1]** 608/4
**581 [1]** 608/5
**588 [1]** 608/6

**6**
**60-something [1]** 577/19
**68 [1]** 577/19

**7**
**7-10-2016 [1]** 572/13
**769-5657/mjsfcs [1]** 552/11

**8**
**801 [1]** 552/3

**9**
**954 [1]** 552/11
**9:35 [2]** 551/7 553/1
**9th [1]** 596/8

**A**
**a.m [4]** 551/7 553/1 601/13 602/21
**ability [4]** 570/10 575/6 579/20 590/11
**above [1]** 608/21
**above-entitled [1]** 608/21
**abridged [1]** 598/14
**absolutely [2]** 572/6 572/6
**accept [1]** 589/21
**accordance [5]** 564/3 568/6 581/1 584/12
 584/13
**account [1]** 559/11
**accountability [3]** 581/17 581/20 581/21
**accounting [1]** 561/1
**accurate [1]** 589/21
**accurately [2]** 570/11 590/12
**acknowledgment [1]** 582/23
**across [1]** 585/10
**act [12]**
**actions [2]** 556/12 597/25
**acts [1]** 588/21
**adding [1]** 578/11
**addition [3]** 568/2 576/17 596/15
**addressed [1]** 600/14
**administrative [6]** 556/14 592/4 592/6 598/4
 598/8 598/12
**administrator [1]** 598/7
**admit [1]** 572/21
**admitted [4]** 565/1 583/23 588/25 589/1
**admittedly [1]** 576/1
**admonition [1]** 554/6
**advantage [1]** 592/18
**advice [3]** 579/8 584/21 584/24
**affect [2]** 582/22 588/16
**affects [1]** 561/22
**affirmative [1]** 592/3
**afternoon [7]** 603/7 605/18 605/21 606/4
 606/6 606/18 607/9
**agency [5]** 592/5 592/6 592/15 598/5 598/6
**agree [4]** 557/24 586/18 588/12 598/20
**agreement [5]** 576/19 596/17 598/25 601/14
 602/7
**agrees [1]** 603/24
**aid [2]** 554/11 592/19
**AL [1]** 551/8
**alleys [1]** 583/4
**allow [3]** 554/7 592/22 598/9
**allowed [8]** 559/16 559/21 562/25 567/2
 567/3 582/6 582/6 584/20
**allows [5]** 559/6 559/25 583/21 587/2
 593/18
**alluded [1]** 605/16
**almost [1]** 563/22
**alone [1]** 596/19
**alternatives [1]** 558/18
**amount [16]**

**amounts [1]** 599/15
**Amy [1]** 552/5
**ANDREU [59]**
**Andreu vs. Waste Pro [1]** 569/25
**Andreu's [3]** 562/3 567/21 585/12
**anonymous [1]** 571/14
**answer [12]**
**answers [2]** 572/5 605/13
**aol.com [1]** 552/11
**apologize [1]** 560/17
**APPEARANCES [1]** 552/1
**apply [1]** 557/12 587/10
**approach [2]** 566/21 600/9
**appropriately [2]** 556/7 587/9
**approval [1]** 592/4
**approvals [1]** 573/7
**approved [20]**
**approves [2]** 570/22 570/22
**approving [1]** 573/9
**approximate [1]** 597/16
**approximately [1]** 564/14
**approximation [1]** 587/16
**April [4]** 551/7 553/1 560/17 570/17
**April 16th [1]** 560/17
**APRIL 19 [1]** 553/1
**argument [4]** 554/13 554/14 580/16 608/2
**arguments [3]** 554/10 554/11 555/7
**arrive [2]** 562/24 562/24
**arriving [1]** 589/6
**assert [1]** 592/3
**asserts [1]** 589/15
**assigned [1]** 563/11
**assume [1]** 589/3
**attacked [1]** 565/17
**attorney [12]**
**attorneys [4]** 554/9 554/10 555/7 557/1
**attributable [1]** 579/6
**audit [12]**
**August [1]** 570/4
**Avenue [2]** 552/3 552/6
**average [1]** 595/22
**averaging [1]** 596/23
**avoid [1]** 558/19
**await [1]** 600/4
**awarded [2]** 556/8 597/15

**B**
**bank [1]** 578/7
**barbecues [1]** 578/4
**bars [1]** 597/25
**basis [2]**
**bathroom [1]** 600/21
**began [1]** 554/20
**begin [1]** 588/6
**beginning [2]** 556/24 586/16
**belief [1]** 559/7
**beliefs [1]** 599/3
**believe [13]**
**believed [2]** 577/24 582/9
**believes [1]** 603/19
**believing [1]** 579/21
**bench [3]** 553/2 600/9 600/10
**beneficial [1]** 558/24
**benefit [1]** 564/24
**beyond [3]** 565/1 566/16 600/14
**biggest [1]** 586/22
**binding [1]** 589/2
**Blvd [1]** 552/10
**board [2]** 559/17 571/3
**bonus [18]**
**bonuses [24]**
**breakfast [1]** 606/16
**broke [1]** 560/14
**Broward [1]** 552/10
**burden [12]**
**business [2]** 571/11 579/20

**B**

businesses [2] 559/5 585/5

**C**

calculate [15]
calculated [2] 579/4 587/2
calculating [3] 564/1 579/4 595/13
calculation [4] 561/6 576/22 580/10 592/15
calculations [2] 586/11 592/10
call [4] 563/4 563/5 563/14 563/16
called [4] 581/19 588/6 591/11 591/21
calling [4] 559/22 559/24 563/15 583/3
candid [2] 582/14 582/19
cards [3] 569/6 570/18 570/21
career [1] 579/25
carried [1] 597/6
carry [1] 592/12
casino [1] 579/19
catch [4] 582/20 582/20 582/21 582/22
caught [1] 583/13
caution [1] 600/4
cease [1] 600/24
cell [3] 571/15 601/7 606/24
ceremony [1] 605/17
certify [1] 608/20
chain [1] 589/16
chance [3] 557/4 577/23 603/11
CHARGE [1] 608/6
charged [1] 561/19
check [1] 587/17
checked [1] 587/21
choose [1] 599/8
chosen [1] 559/4
cigarette [1] 600/21
circumstances [1] 589/17
circumstantial [3] 589/13 589/16 589/19
CIV [1] 551/4
claim [16]
claims [4] 573/12 573/17 593/1 593/23
clearer [1] 563/2
clerk [2] 601/23 603/1
clock [2] 564/6 571/14
clocked [1] 572/9
close [1] 583/9
closing [2] 554/10 608/2
collect [2] 601/7 606/24
collective [1] 605/9
commerce [3] 557/18 593/8 593/15
common [12]
commonly [1] 595/6
communicate [1] 599/22
communicated [1] 571/9
companies [1] 587/2
company [12]
company's [1] 566/13
compensate [4] 561/15 584/6 586/3 592/11
compensated [1] 597/8
compensating [1] 555/2
compensation [22]
complained [1] 598/2
completion [1] 563/11
complex [1] 558/17
compliance [1] 579/21
complied [3] 566/12 578/23 580/9
comply [2] 563/1 582/12
comprehensive [3] 585/8 585/9 585/11
computer [1] 551/25
concerned [1] 589/12
concerning [4] 575/9 589/25 594/19 598/16
conclude [1] 580/16
concluded [1] 607/15
conclusion [1] 587/7
conclusions [1] 599/11
conduct [6] 585/16 587/20 587/23 596/10
  596/12 597/19
conducted [1] 562/5

conformity [2] 556/13 598/3
confused [1] 576/2
confusing [2] 557/4 578/10
consistency [1] 581/16
consistent [1] 587/5
consistently [1] 564/3
contend [1] 592/8
content [1] 600/11
contention [2] 567/25 591/17
contract [2] 576/19 596/17
contradicted [1] 562/7
contradiction [1] 562/17
convenience [1] 599/12
convicted [2] 573/2 590/24
convince [1] 578/15
convinced [1] 599/2
convincing [1] 597/5
copy [4] 556/1 575/16 601/1 603/1
Coral [1] 570/8
corners [1] 572/3
corporation [4] 588/15 588/16 588/18
  588/20
counsel [13]
court [17]
courtroom [9] 554/4 599/21 600/1 601/22
  602/20 602/22 604/22 607/4 607/14
covered [1] 588/17
credibility [3] 568/15 568/21 568/22
crime [2] 573/3 590/25
CRR [2] 552/8 608/24
crux [1] 573/25
Cummings [1] 552/3
cut [1] 572/3

**D**

daily [4] 559/24 574/24 604/6 605/8
damage [2] 580/23 581/3
damages [15]
date [5] 596/7 596/13 599/16 599/20 608/24
dated [2] 604/1 605/5
day's [3] 560/6 594/10 594/23
day/job [2] 594/8 594/9
dealt [1] 588/17
deception [1] 591/6
decide [12]
decision [12]
decreased [2] 574/21 594/15
deductions [1] 589/11
defendant [4] 552/5 557/22 566/4 568/18
defendants [30]
defendants' [2] 556/12 557/1
defense [5] 553/18 592/3 597/24 603/19
  604/17
deliberate [5] 555/25 597/21 600/25 601/13
  606/12
deliberating [2] 604/13 604/14
deliberation [3] 600/24 601/12 606/17
deliberations [19]
demand [2] 581/20 581/21
denied [2] 562/11 579/18
deny [3] 565/5 565/12 565/15
Department [5] 556/14 577/25 592/9 592/14
  598/8
depend [1] 591/7
depending [1] 599/13
depo [1] 577/13
deposition [1] 572/22
designated [2] 598/5 598/6
designed [3] 558/17 563/12 578/16
detail [1] 591/8
determination [2] 555/21 562/19
determine [9] 558/1 561/6 566/15 576/25
  583/17 583/18 584/3 584/4 596/20
determined [1] 594/6
determining [4] 561/19 568/8 578/22 596/21
difference [3] 589/18 595/25 596/4

difficult [1] 567/5
dilute [2] 577/15 577/16
dilutes [1] 561/17
diluting [1] 578/11
dime [1] 581/3
Dimitrouleas [3] 551/14 556/18 586/15
dinner [1] 606/15
direct [5] 589/12 589/14 589/19 599/9
  599/10
directly [3] 562/11 571/25 590/14
disbelieve [1] 589/24
discuss [4] 554/6 566/15 598/24 606/16
discussed [3] 554/7 566/16 587/10
discussing [2] 574/9 598/25
Discussion [1] 553/20
discussions [1] 588/6
dishonesty [2] 573/3 590/25
disposal [1] 555/4
disprove [1] 589/17
dispute [3] 565/7 584/25 593/21
disregard [8] 556/6 585/16 587/22 588/13
  589/5 596/9 596/11 597/18
DISTRICT [4] 551/1 551/2 551/15 552/9
divide [2] 554/13 586/4
DIVISION [2] 551/3 598/7
doctor [2] 585/18 585/19
document [1] 576/17
documents [5] 569/5 572/21 573/7 573/9
  577/8
dollars [1] 561/25 579/22 585/1 586/14
Donna [1] 607/8
door [2] 583/10 583/12
drawn [1] 597/14
drew [1] 559/17
driver [2] 571/16 582/18
drivers [2] 571/12 578/4
drove [1] 565/18
dump [1] 582/16
duration [1] 600/22
duties [1] 588/22
duty [1] 588/4

**E**

earn [1] 565/14
earned [1] 579/5
earning [2] 574/22 594/16
earnings [6] 576/18 596/16 603/16 604/1
  605/4 605/5
earns [2] 560/5 594/9
Easter [3] 573/12 574/23 577/12
easy [2] 567/1 567/4
echo [1] 581/24
Edwards [9] 552/2 552/3 554/12 554/15
  581/13 585/23 603/23 608/3 608/5
effect [1] 586/19
eight [19]
eight-hour [7] 573/18 584/8 593/24 594/7
  595/3 604/2 605/7
eighth [1] 606/19
elapsed [1] 580/15
emphasize [1] 592/24
employ [1] 558/8
employed [9] 557/17 558/25 577/21 577/23
  585/12 593/8 593/14 593/16 595/16
employee [32]
employee's [6] 574/20 594/14 595/4 595/12
  597/14 598/13
employees [23]
employer [14]
employer's [3] 597/2 597/4 598/10
employers [6] 558/8 565/22 566/8 567/13
  585/5 593/18
employment [2] 563/15 571/9
encompasses [1] 574/3
enforcement [1] 592/6
engaged [3] 557/18 593/8 593/15

**E**

**ensure [2]** 564/19 581/18
**enterprise [3]** 557/17 593/8 593/14
**entitled [11]** 554/13 573/25 574/2 574/6 574/18 577/7 592/24 594/25 596/6 596/12 608/21
**Eola [1]** 552/7
**equal [2]** 554/12 588/17
**equals [1]** 588/18
**equation [1]** 559/12
**errand [2]** 583/6 583/6
**error [1]** 561/1
**Esq [4]** 552/2 552/2 552/5 552/5
**essential [4]** 567/24 591/10 591/16 591/24
**establish [4]** 567/24 568/2 591/16 591/24
**established [2]** 581/3 595/21
**ET [1]** 551/8
**evaluated [1]** 585/10
**evaluating [3]** 562/9 581/25 582/1
**everybody [2]** 553/3 607/2
**everyone [1]** 554/6
**evidence [69]**
**evident [2]** 575/19 575/23
**examine [1]** 599/1
**examples [1]** 572/12
**exception [2]** 580/8 600/11
**excess [4]** 574/19 594/4 594/6 595/1
**exchange [1]** 564/25
**exclusive [1]** 595/18
**executed [1]** 587/1
**exemplary [1]** 572/2
**exhibits [3]** 553/7 589/1 591/22
**exists [5]** 558/12 558/13 558/14 558/15 562/8
**exited [3]** 602/20 607/4 607/14
**expansive [1]** 579/24
**experiencing [1]** 585/19
**explain [10]** 557/2 557/4 561/11 562/23 562/25 565/24 588/11 593/11 598/21 602/2
**explained [2]** 563/25 565/9
**explanations [2]** 559/19 559/19
**extent [1]** 597/9
**extra [5]** 563/5 563/18 565/3 565/10 565/11
**eyewitness [1]** 589/16

**F**

**facility [1]** 571/17
**fact [1]**
**factor [1]** 560/21
**factored [1]** 560/21
**facts [7]** 557/12 587/5 588/1 589/7 589/17 593/5 599/6
**factual [2]** 589/4 593/12
**fail [1]** 556/3
**failed [4]** 558/3 567/16 593/9 596/1
**failing [1]** 578/11
**fails [5]** 567/24 568/2 591/16 591/24 597/14
**failure [1]** 556/6
**fairness [1]** 581/16
**faith [6]** 556/13 585/14 592/3 592/13 597/24 598/3
**false [2]** 573/3 590/25
**falsely [2]** 572/25 590/18
**fantasy [1]** 571/10
**fashion [1]** 560/1
**federal [2]** 558/7 593/2
**felony [2]** 573/3 590/25
**figure [2]** 559/9 577/11
**filed [2]** 596/8 596/14
**filing [1]** 556/10
**fill [2]** 599/15 599/20
**findings [1]** 585/2
**finished [1]** 588/5
**firm [1]** 579/22
**firsthand [2]** 565/6 565/16
**fit [1]** 587/14

**five o'clock [1]** 606/12
**fix [5]** 571/4 571/5 572/6 574/17 580/3
**fixed [1]** 571/25
**flat [8]** 560/5 560/8 560/12 560/22 583/25 587/11 594/10 594/22
**FLORIDA [10]** 551/2 551/6 551/8 552/4 552/7 552/10 568/19 569/25 579/18 581/7
**Florida, [1]** 592/2
**Florida, Inc [1]** 592/2
**FLSA [21]**
**football [1]** 571/10
**Ford [1]** 579/1
**foregoing [2]** 600/17 608/20
**foreman [1]** 604/24
**foreperson [4]** 599/9 599/9 599/16 599/19
**forget [1]** 591/3
**form [17]**
**formal [1]** 582/25
**forms [4]** 560/10 577/1 577/1 582/18
**formula [1]** 580/13
**FORT [4]** 551/3 551/6 552/4 552/10
**Fortunately [2]** 555/5 559/14
**fourth [1]** 563/14
**Francine [3]** 552/8 608/23 608/24
**fuel [1]** 575/13

**G**

**garbage [1]** 583/4
**gather [1]** 601/2
**general [2]** 588/20 598/12
**gentlemen [1]** 581/14
**gets [3]** 567/5 570/6 577/17
**gives [1]** 571/15
**gonna [28]**
**good-faith [1]** 597/24
**governs [1]** 587/25
**greater [1]** 602/21
**grew [1]** 571/11
**gross [1]** 579/5
**guidance [2]** 592/9 592/14
**guideline [1]** 598/12

**H**

**half [37]**
**half-time [1]** 594/25
**hand [3]** 586/25 595/2 606/9
**happy [1]** 571/13
**Harrison [1]** 579/1
**hear [4]** 567/3 585/20 601/24 602/14
**heard [34]**
**hearing [2]** 567/8 600/10
**help [1]** 571/2
**helper [1]** 571/16
**hesitate [1]** 599/1
**Hey [3]** 570/14 580/3 583/5
**hide [1]** 563/4
**hiding [2]** 570/24 570/24
**hired [1]** 579/22
**hiring [1]** 565/8
**history [1]** 582/4
**home [1]** 604/11
**honest [2]** 582/14 599/3
**Honor [23]**
**Honorable [1]** 551/14
**hour [16]**
**hourly [6]** 593/18 593/22 595/8 595/14 604/3 605/7
**hours [62]**
**house [1]** 579/17
**Hudson [1]** 552/5

**I**

**I'd [2]** 566/24 576/4
**I'll [16]**
**I'm [14]**
**I've [7]** 589/3 598/15 602/2 605/2 605/10

605/13 605/17
**idea [2]** 570/6 570/17
**identify [1]** 577/11
**imagine [1]** 607/6
**impress [3]** 568/24 569/1 590/4
**impressions [1]** 592/25
**improperly [3]** 567/10 579/19 597/8
**improve [1]** 558/16
**inaccurate [2]** 566/1 597/4
**inaccurately [1]** 591/4
**Inc [1]** 592/2
**incidents [1]** 560/25
**include [3]** 585/15 604/7 605/8
**included [4]** 561/17 575/24 576/20 596/18
**includes [1]** 588/25
**including [3]** 579/5 580/7 600/7
**inconsistency [2]** 562/10 562/11
**incorrect [1]** 598/11
**incorrectly [2]** 556/12 561/2
**increased [2]** 574/21 594/15
**independent [1]** 592/21
**INDEX [1]** 608/1
**indication [1]** 598/13
**individual [1]** 598/13
**individually [1]** 557/22
**inference [4]** 566/3 566/5 597/10 597/13
**influenced [2]** 588/9 592/22
**information [8]** 557/5 562/4 565/6 565/16 566/5 566/6 583/12 600/6
**innocent [1]** 591/5
**inputted [1]** 561/1
**inspections [1]** 578/1
**instances [2]** 561/24 575/4
**instead [3]** 559/8 559/10 577/10
**instruct [9]** 567/4 567/9 567/19 568/7 572/24 573/15 573/19 576/14 588/4
**instructed [1]** 603/21
**instruction [6]** 557/14 560/2 560/3 560/18 565/20 574/9
**instruction 9 [1]** 574/9
**instructions [8]** 556/18 557/11 588/13 588/14 589/5 598/15 600/12 601/1
**instructs [1]** 576/15
**insufficient [2]** 597/22 598/9
**intended [6]** 554/11 561/14 573/17 586/3 593/21 593/24
**intentional [2]** 591/6 597/21
**interest [3]** 569/18 590/8 599/6
**interpretation [5]** 589/8 592/5 598/4 598/9 598/11
**interpretations [2]** 556/14 598/6
**interruptions [3]** 600/20 600/22 600/23
**interview [2]** 565/8 582/10
**interviewed [1]** 582/8
**investigate [1]** 571/6
**isolated [1]** 560/25
**issue [10]** 555/12 557/20 560/3 563/2 566/16 567/14 580/12 583/17 589/4 598/16
**issues [7]** 555/16 555/21 556/2 556/21 558/5 581/25 593/12

**J**

**job [29]**
**jobs [1]** 564/5
**joining [1]** 566/24
**Joseph [1]** 552/5
**judge [25]**
**Judge Dimitrouleas [2]** 556/18 586/15
**judge's [1]** 605/17
**judges [3]** 587/18 599/5 599/6
**June [1]** 572/13
**June 6 [1]** 572/13
**jurors [5]** 586/17 592/23 598/24 600/5 601/9
**jury [28]**
**justice [1]** 588/18

**K**

**keeping [1]** 597/2
**key [1]** 571/15
**knock [1]** 583/3
**knock-around [1]** 583/3
**Knowing [1]** 566/25
**knowledge [1]** 589/15
**knows [1]** 571/12

**L**

**Labor [12]**
**lack [1]** 559/19
**Ladies [1]** 581/14
**Lake [1]** 552/7
**landfill [2]** 575/22 575/22
**lapse [1]** 591/5
**lastly [1]** 556/11
**LAUDERDALE [4]** 551/3 551/6 552/4 552/10
**law [37]**
**lawsuit [4]** 569/20 572/18 596/8 596/14
**lawyer [1]** 585/4
**lawyers [6]** 555/23 567/1 589/2 600/2
  605/12 607/5
**leads [1]** 557/6
**leave [6]** 555/25 575/21 601/22 606/5 606/9
  606/23
**leaves [1]** 600/23
**legal [5]** 555/12 558/23 560/23 583/21
  589/18
**length [1]** 587/11
**lets [1]** 607/8
**liable [4]** 580/19 580/20 580/25 581/9
**lifeblood [1]** 571/12
**lines [1]** 599/16
**listened [1]** 555/19
**lists [1]** 557/10
**lockbox [1]** 571/14
**log [2]** 564/22 566/9
**logged [2]** 566/12 581/19
**Lombardo [7]** 559/17 562/14 562/23 568/19
  570/22 576/20 580/10
**lost [2]** 596/6 596/13
**lower [4]** 559/12 559/13 559/13 559/13
**lowers [1]** 566/2
**lunch [4]** 601/5 601/5 601/6 601/6
**luncheon [1]** 601/4

**M**

**machine [1]** 575/16
**Mackie [23]**
**Mackie's [1]** 562/10
**magic [3]** 586/22 586/24 586/25
**man [4]** 569/2 572/18 577/18 583/5
**manner [3]** 557/8 583/22 600/12
**Marc [1]** 552/2
**massive [1]** 586/12
**math [2]** 561/21 562/24
**matter [5]** 573/4 590/1 597/9 597/19 608/21
**matters [2]** 561/7 589/9
**May 9th [1]** 596/8
**mean [4]** 571/4 574/23 589/21 591/1
**meanings [2]** 558/23 558/23
**means [11]** 560/20 561/5 561/9 561/16
  565/25 565/25 567/20 579/12 591/13 596/19
  597/17
**measure [1]** 580/4
**mechanical [1]** 551/24
**members [3]** 588/3 599/9 600/18
**memories [1]** 592/25
**memory [4]** 570/2 590/10 591/5 592/19
**men [1]** 585/11
**mere [1]** 597/22
**message [3]** 571/21 599/23 600/3
**method [8]** 557/8 559/1 559/1 559/4 559/17
  564/10 592/11 595/8
**methodology [1]** 562/2

**Miami [2]** 602/3 605/17
**million [2]** 579/22 585/1
**minimize [2]** 600/19 600/22
**minimum [2]** 562/12 597/25
**minute [2]** 562/13 572/16
**minutes [3]** 565/4 578/20 585/23
**mirrors [1]** 575/15
**missing [3]** 566/1 587/20 597/5
**misstated [1]** 591/4
**misstatement [1]** 591/7
**misstatements [1]** 573/6
**mistake [1]** 591/1
**mistakes [1]** 582/22
**mjsfcs [1]** 552/11
**moment [5]** 557/1 565/23 566/14 570/20
  593/11
**Monday [1]** 605/16
**money [7]** 559/6 561/21 565/2 565/14
  569/16 577/15 577/17
**Moreno [1]** 604/24
**morning [12]**
**Mr [2]** 608/3 608/5
**Mr. [51]**
**Mr. Andreu [33]**
**Mr. Andreu's [2]** 562/3 585/12
**Mr. Edwards [5]** 554/12 554/15 581/13
  585/23 603/23
**Mr. Mackie [9]** 557/22 562/7 562/17 563/12
  565/1 578/15 578/23 583/10 583/23
**Mr. Mackie's [1]** 562/10
**Mr. Moreno [1]** 604/24
**Ms [1]** 608/4
**Ms. [11]** 554/14 559/17 562/14 562/23
  565/24 566/14 566/20 578/20 580/15 581/23
  586/22
**Ms. Lombardo [3]** 559/17 562/14 562/23
**Ms. Tingley [5]** 554/14 565/24 566/14
  566/20 578/20 580/15 581/23 586/22
**multiply [4]** 559/10 586/5 586/6 595/25
**mutual [2]** 575/9 594/19
**mysterious [1]** 571/1

**N**

**name [1]** 563/5
**names [1]** 558/21
**nature [3]** 573/20 576/23 595/16
**NE [1]** 552/3
**necessary [1]** 596/20
**negate [2]** 575/5 597/13
**negates [1]** 573/14
**negative [1]** 577/11
**negligence [1]** 597/22
**negotiation [1]** 583/1
**Neither [1]** 556/25
**nine [12]**
**nine o'clock [11]** 603/4 604/12 605/20
  605/25 606/2 606/4 606/14 606/22 606/25
  607/2 607/11
**noncompliance [1]** 585/15
**none [2]** 560/19 600/14
**nonovertime [1]** 595/15
**nonpayment [1]** 564/13
**normal [1]** 595/15
**normally [1]** 605/15
**North [1]** 552/6
**note [5]** 600/8 602/25 603/1 603/2 603/3
**notes [8]** 555/20 592/17 592/19 592/20
  592/22 592/24 604/2 605/6
**notice [2]** 560/18 570/21
**number [27]**
**Number 6 [1]** 571/24
**number 8 [1]** 557/14
**numbers [6]** 553/7 553/11 553/13 561/1
  562/24 587/12

**O**

**o'clock [12]**

**objection [1]** 600/11
**objective [2]** 597/24 598/9
**obligations [1]** 565/21
**observe [2]** 570/11 590/12
**observed [2]** 571/25 579/8
**occasion [2]** 560/16 581/2
**occasions [8]** 560/15 561/7 563/18 563/23
  581/3 582/16 582/16 582/18
**odd [1]** 561/24
**offense [1]** 563/14
**offer [2]** 593/2 597/5
**office [1]** 575/15
**officer [2]** 599/24 599/24
**Official [1]** 552/9 608/24
**Oh [3]** 553/5 572/11 572/15
**omission [1]** 598/2
**one's [1]** 587/17
**one-and-a-half [4]** 586/5 594/5 595/4
  595/10
**open [2]** 583/10 583/12
**open-door [2]** 583/10 583/12
**opening [4]** 554/13 558/5 567/12 577/14
**opinion [2]** 589/4 599/1
**opportunity [8]** 554/9 554/19 557/2 567/7
  570/10 587/21 590/11 592/19
**option [2]** 604/12 604/18
**order [6]** 553/11 584/1 592/4 601/4 601/5
  601/19
**Orlando [1]** 552/7
**outcome [2]** 569/19 590/9
**overnight [1]** 578/2
**overtime [55]**
**owed [6]** 561/21 561/25 584/17 586/13
  595/23

**P**

**P.A [1]** 552/6
**p.m [2]** 602/21 607/15
**PAGE [1]** 608/2
**paper [2]** 575/16 575/16
**part [10]** 567/24 568/2 575/17 575/18 578/10
  584/20 589/25 591/10 591/16 591/24
**parties [6]** 561/13 593/13 593/15 593/21
  595/17 600/3
**parties' [1]** 603/17
**party [1]** 588/15
**patience [1]** 555/15
**patient [1]** 600/4
**Paul [1]** 552/2
**Pause [1]** 603/13
**pay [65]**
**payment [7]** 557/7 560/20 561/17 562/2
  562/6 565/9 592/11
**payments [14]**
**people [7]** 577/17 580/2 582/22 586/21
  588/19 591/3 600/25
**perfect [1]** 587/17
**performed [3]** 592/10 597/7 597/12
**perhaps [1]** 592/18
**permit [1]** 596/23
**permitted [1]** 592/17
**person [3]** 554/23 589/14 606/19
**personal [4]** 557/24 569/18 571/9 590/8
**personally [1]** 579/8
**persons [1]** 588/17
**persuade [2]** 567/21 591/14
**persuasion [1]** 591/12
**phone [1]** 571/15
**phones [3]** 583/4 601/7 606/24
**pick [2]** 564/21 574/16
**picking [2]** 575/21 583/4
**place [6]** 564/19 564/22 566/8 581/18
  582/21 582/22
**plaintiff [37]**
**plaintiff's [6]** 573/21 573/22 591/15 591/25
  592/16 598/16

# P

**PLLC [1]** 552/3
**plural [1]** 580/20
**point [2]** 590/1 605/11
**points [1]** 574/10
**policies [10]** 563/10 565/9 572/2 573/20
581/18 582/11 582/21 582/21 586/20 586/21
**policy [14]**
**position [2]** 570/19 603/17
**post [1]** 572/4
**post-trip [1]** 572/4
**posted [1]** 571/16
**power [1]** 584/10
**practice [1]** 592/6
**practices [2]** 558/13 562/6
**precise [1]** 597/12
**precludes [1]** 579/10
**prefer [1]** 604/17
**prejudice [1]** 588/10
**premium [4]** 574/6 575/6 575/6 578/13
**prepared [1]** 599/12
**preponderance [13]**
**presence [1]** 554/7
**present [3]** 553/22 554/21 602/24
**presented [3]** 556/22 581/25 588/9
**president [3]** 582/3 582/4 583/14
**pretrial [2]** 553/12 553/13
**pretrip [1]** 572/4
**prevail [1]** 598/18
**prevent [2]** 554/23 577/17
**priority [1]** 592/20
**PRO [41]**
**Pro's [4]** 561/21 570/24 575/5 582/11
**proactive [1]** 580/4
**problem [1]** 564/18
**proceed [1]** 554/17
**proceedings [5]** 551/13 551/24 600/17
607/15 608/21
**produce [2]** 565/15 597/15
**produced [2]** 551/25 591/23
**produces [1]** 597/8
**prohibited [6]** 556/7 585/16 587/23 596/10
596/12 597/19
**prohibits [2]** 563/20 578/24
**promise [2]** 576/19 596/18
**promised [8]** 563/22 563/23 564/18 565/11
565/12 576/18 583/15 596/16
**promises [2]** 563/21 564/4
**promptly [1]** 599/25
**prong [1]** 598/10
**proof [7]** 567/23 568/2 577/6 589/16 591/12
591/16 591/24
**properly [5]** 557/9 558/4 558/25 581/9
583/20
**protect [1]** 558/13
**prove [9]** 565/15 566/2 566/3 577/7 577/8
577/10 589/17 591/10 593/5
**proved [2]** 558/2 591/19
**proven [2]** 583/19 587/8
**proves [2]** 597/7 598/2
**provide [1]** 598/6
**provided [2]** 555/25 592/14
**proving [1]** 592/12
**provision [1]** 563/1
**provisions [1]** 598/1
**purposes [2]** 568/8 578/22
**pursuant [2]** 576/19 596/17

# Q

**qualifications [1]** 584/25
**qualifies [1]** 557/24
**quarter [2]** 579/22 584/25
**question [15]**
**questions [21]**
**quit [1]** 578/8
**quoted [2]** 604/3 605/7

# R

**raise [1]** 606/9
**rate [100]**
**rates [4]** 560/4 560/4 595/21 595/22
**re [1]** 599/1
**re-examine [1]** 599/1
**reach [5]** 589/11 598/25 603/8 604/15
605/24
**reached [1]** 601/23
**read [1]** 557/19
**realizing [1]** 604/14
**reasonableness [1]** 597/13
**reasoning [1]** 589/10
**reasons [1]** 587/10
**rebuttal [1]** 554/14
**recall [1]** 578/6
**receive [4]** 556/18 561/8 562/13 605/24
**received [5]** 557/5 567/8 576/12 591/22
595/17
**receives [5]** 560/5 560/8 560/10 594/10
594/12
**receiving [1]** 557/10
**recess [11]** 601/24 602/3 602/14 602/21
603/4 605/19 606/1 606/6 606/13 606/17
607/11
**reckless [6]** 556/6 585/15 587/22 596/9
596/11 597/18
**recollection [7]** 566/4 567/7 570/4 589/8
592/21 603/21 605/10
**reconstruct [1]** 565/18
**record [7]** 553/20 553/21 555/17 555/17
555/17 602/23 608/21
**recorded [1]** 551/24
**recordkeeping [1]** 565/21
**records [12]**
**recover [2]** 596/6 596/13
**recycling [1]** 555/4
**reduce [1]** 596/24
**reference [1]** 560/19
**reflect [2]** 576/24 595/16
**refuel [1]** 582/17
**Regina [8]** 568/19 570/22 571/4 571/5 572/6
576/20 577/13 580/10
**region [1]** 580/8
**regional [3]** 582/3 582/4 583/14
**regions [1]** 585/10
**regular [17]**
**regularly [1]** 595/18
**regulated [1]** 564/18
**regulation [1]** 592/4
**regulations [1]** 581/6
**reliance [6]** 556/13 592/3 598/4 598/9
598/10 598/11
**relied [2]** 592/8 592/13
**rely [5]** 573/5 574/11 581/5 603/20 605/9
**remain [1]** 600/6
**remember [6]** 559/18 564/12 570/13 582/8
591/3 599/5
**remembered [1]** 577/12
**remembers [2]** 570/7 591/2
**remind [1]** 583/9
**report [5]** 576/10 579/3 584/18 584/19 585/1
**Reporter [3]** 552/8 552/9 608/24
**reporting [1]** 587/20
**represent [1]** 585/5
**representative [1]** 568/18
**represents [2]** 577/18 585/4
**request [1]** 564/23
**required [14]**
**requirements [1]** 593/20
**residential [1]** 570/8
**resigned [1]** 578/6
**resolved [1]** 555/11
**respond [3]** 599/25 600/3 604/16
**response [6]** 600/4 603/17 604/4 604/5
604/8 604/9

**responsibility [3]** 586/16 591/9 597/2
**rested [1]** 554/8
**result [3]** 559/2 586/24 597/16
**results [1]** 579/25
**resume [1]** 606/20
**retire [2]** 601/9 605/15
**return [4]** 581/8 587/4 587/19 599/20
**reward [3]** 558/14 558/15 563/8
**rigged [1]** 571/22
**rise [5]** 554/3 601/11 602/19 604/21 607/3
**RMR [2]** 552/8 608/24
**RMR-CRR [1]** 608/24
**road [1]** 586/23
**robing [1]** 605/17
**ROGER [30]**
**room [12]**
**Rosalind [1]** 552/6
**Rosenberg [1]** 552/3
**Rosenthal [1]** 552/2
**route [6]** 563/12 566/7 566/7 570/8 575/20
575/21
**routes [2]** 565/9 565/18
**rule [4]** 560/14 563/19 578/24 579/10
**rules [5]** 559/1 559/14 559/15 559/15 588/4
**ruling [1]** 592/4
**Russell [14]**

# S

**Salopek [3]** 552/8 608/23 608/24
**sat [1]** 555/6
**save [1]** 559/6
**saw [13]**
**scheme [1]** 578/16
**scope [1]** 588/22
**seat [1]** 605/1
**second [4]** 560/16 563/2 593/8 603/25
**secret [1]** 598/20
**security [2]** 599/24 599/24
**seek [2]** 584/24 599/6
**self [2]** 575/19 575/23
**self-evident [2]** 575/19 575/23
**send [3]** 601/1 601/2 604/11
**sense [9]** 568/10 568/11 568/13 574/23
577/4 581/23 581/24 582/2 589/11
**September [6]** 560/16 570/5 604/1 604/1
605/5 605/6
**September 11th [2]** 604/1 605/5
**September 24th [2]** 604/1 605/6
**September 30th [1]** 560/16
**services [11]** 560/8 560/10 563/3 576/1
576/7 576/7 576/9 576/16 577/2 583/23
594/13
**seven [2]** 585/10 590/15
**severance [1]** 578/7
**shall [1]** 595/17
**shared [1]** 600/7
**sheets [4]** 564/24 566/7 566/7 582/24
**shift [2]** 577/5 582/17
**shifts [1]** 597/11
**shown [1]** 555/1
**shred [1]** 576/25
**sic [2]** 580/20 595/20
**side [2]** 554/12 586/23
**sidebar [2]** 600/9 600/17
**sides [3]** 554/8 557/23 560/13
**sign [2]** 599/16 599/20
**significance [1]** 591/6
**simple [1]** 591/1
**single [4]** 562/19 588/13 595/19 596/22
**situation [2]** 558/17 582/25
**six-day [1]** 584/9
**slight [1]** 586/25
**slowly [1]** 564/8
**small [1]** 562/10
**smoke [2]** 575/14 600/21
**soon [2]** 555/7 566/19

**S**

**sought [1]** 584/21
**SOUTHERN [1]** 551/2
**specific [1]** 575/4
**spoke [4]** 556/23 558/18 575/25 586/15
**spoken [1]** 554/14
**Springs [1]** 570/8
**stand [7]** 569/2 570/6 582/15 583/24 585/2
 588/17 596/19
**Standards [8]** 557/15 558/6 558/7 578/24
 579/15 581/10 593/3 597/3
**statement [8]** 553/12 553/13 558/6 567/12
 573/3 590/25 604/1 605/5
**statements [2]** 570/14 588/21
**STATES [9]** 551/1 551/15 552/9 585/11
 592/5 592/7 592/9 592/14 592/15
**stay [1]** 564/7
**stayed [1]** 564/6
**stenography [1]** 551/24
**step [1]** 553/6
**stick [1]** 607/6
**stipulated [3]** 557/21 593/13 593/15
**stop [1]** 578/5
**Stovash [1]** 552/6
**straightforward [2]** 555/22 556/2
**stuck [1]** 555/19
**subjective [1]** 562/19
**submit [10]** 554/24 563/2 570/12 573/4
 575/14 576/1 578/17 580/23 581/1 586/10
**submitted [1]** 556/20
**substitutes [1]** 597/6
**subtract [1]** 595/24
**succeed [1]** 593/4
**sudden [1]** 579/11
**sue [1]** 569/22
**suffered [1]** 566/17
**suffice [1]** 598/12
**sufficient [1]** 597/8
**suggest [3]** 568/23 569/13 590/2
**suggested [1]** 573/11
**sum [4]** 560/6 560/8 594/10 594/22
**Sunday [3]** 573/12 574/23 577/13
**supervisor [4]** 562/19 564/20 564/22 571/7
**supervisors [1]** 581/19
**supplement [1]** 605/11
**support [1]** 597/22
**supported [1]** 587/25
**surely [1]** 564/23
**sympathy [1]** 588/10
**symptoms [1]** 585/19
**synonymous [1]** 597/20
**system [1]** 554/22
**system's [1]** 571/22

**T**

**table [1]** 601/15
**take [15]**
**taken [6]** 555/20 556/13 557/6 592/18 598/2
 602/21
**takes [2]** 580/12 583/6
**talk [5]** 567/2 568/15 584/18 600/2 606/18
**talked [5]** 573/10 577/6 577/15 581/23
 583/16
**talking [3]** 571/10 576/5 600/1
**task [5]** 561/14 562/18 567/4 567/5 574/17
**tasks [1]** 564/15
**tedious [1]** 555/18
**tell [24]**
**telling [7]** 568/24 569/1 569/11 570/1 570/8
 590/5 591/2
**tells [2]** 574/1 583/1
**ten-hour [1]** 574/4
**tend [2]** 589/17 591/3
**tens [1]** 586/13
**termination [1]** 563/15
**terms [1]** 566/17

**Terry [2]** 553/3 602/11
**test [2]** 597/25 598/10
**testified [5]** 562/23 570/11 572/25 590/12
 590/18
**testify [5]** 562/5 562/14 563/7 572/8 585/2
**testifying [1]** 589/25
**testimony [21]**
**text [1]** 571/21
**thank [20]**
**thanking [1]** 566/24
**theory [1]** 558/24
**there'd [1]** 607/6
**they'd [2]** 581/16 603/10
**think [10]** 567/7 569/23 577/19 581/2 582/6
 584/5 586/2 599/3 605/16 607/5
**thousands [1]** 586/13
**THURSDAY [1]** 553/1
**till [1]** 606/12
**time [61]**
**time's [1]** 580/15
**time-and-a-half [1]** 595/6
**times [8]** 563/22 564/15 564/16 569/3 571/2
 571/19 595/4 595/10
**Tingley [11]** 552/5 552/6 554/14 565/24
 566/14 566/20 578/20 580/15 581/23 586/22
 608/4
**tiresome [1]** 555/18
**tonight [1]** 606/15
**top [3]** 578/13 579/23 585/8
**total [7]** 561/17 584/4 584/5 586/1 586/3
 586/4 595/24
**transcript [3]** 551/13 551/24 608/20
**Transportation [1]** 577/25
**trash [2]** 575/21 578/1
**treading [1]** 554/24
**treats [1]** 571/11
**trial [10]** 551/13 554/20 554/25 557/6 558/22
 573/6 582/1 589/6 590/22 592/17
**trials [2]** 555/15 555/15
**trick [3]** 586/22 586/24 586/25
**trip [1]** 572/4
**truck [4]** 564/21 574/16 578/2 582/16
**true [8]** 560/14 567/22 567/22 567/22
 569/24 589/21 591/15 591/15
**truth [13]**

**U**

**unanimous [2]** 598/19 606/5
**understand [5]** 555/15 570/19 571/24
 590/13 600/2
**understanding [4]** 554/11 575/9 594/19
 605/23
**Understood [1]** 602/6
**undisputed [1]** 571/7
**unduly [1]** 592/22
**unfair [1]** 558/13
**unimportant [1]** 591/8
**UNITED [9]** 551/1 551/15 552/9 585/11
 592/5 592/7 592/9 592/14 592/15
**unless [3]** 596/8 606/16 606/20
**us [8]** 553/11 555/6 555/14 555/14 555/14
 555/19 580/3 607/8
**USA [1]** 585/9
**usage [1]** 597/20
**utilize [6]** 558/19 559/4 559/14 562/2 562/3
 562/25
**utilizing [1]** 557/7

**V**

**vacation [1]** 578/7
**vague [1]** 598/11
**vehicle [1]** 575/13
**vendetta [1]** 557/24
**verdict [29]**
**vetted [1]** 587/22
**vice [2]** 582/3 582/4 583/14

**violate [1]** 587/24
**violations [1]** 597/25
**VOLUME [1]** 551/17
**voluntary [1]** 597/21
**voted [1]** 600/5
**vs. [1]** 569/25
**VUE [1]** 552/7

**W**

**wage [5]** 558/13 574/21 594/14 597/25
 598/7
**wages [5]** 559/13 579/3 579/5 596/6 596/13
**Wait [1]** 579/11
**waiting [1]** 575/22
**waived [1]** 598/14
**wake [1]** 586/23
**wander [1]** 601/21
**waste [47]**
**Waste Pro [39]**
**Waste Pro's [4]** 561/21 570/24 575/5 582/11
**water [1]** 554/24
**waters [1]** 561/18
**week [18]**
**week-by-week [1]** 596/21
**weeks [2]** 564/17 597/1
**weeks' [1]** 578/7
**weighing [1]** 568/8
**weight [2]** 589/18 592/25
**weighted [1]** 595/22
**whichever [2]** 601/25 602/15
**whittles [1]** 551/18
**whittling [1]** 564/8
**who's [1]** 569/15
**willful [2]** 585/15 597/20
**willfully [1]** 587/24
**willfulness [2]** 597/17 597/23
**William [1]** 551/14
**wing [1]** 577/24
**wins [1]** 579/17
**wish [1]** 599/22
**witness [2]**
**witness's [1]** 572/19 590/15
**witnesses [8]** 551/24 563/7 568/16 568/16
 568/20 589/1 589/25 591/21
**women [1]** 585/12
**word [1]** 597/20
**words [12]**
**work [33]**
**workday [4]** 584/8 593/25 594/8 595/3
**worked [32]**
**worker [1]** 575/15
**working [1]** 572/14
**works [10]** 559/12 560/7 560/9 562/21
 562/22 565/14 594/11 594/15 595/9 595/19
**workweek [20]**
**workweeks [2]** 596/19 596/23
**WPD [1]** 551/4
**wrapping [1]** 586/15
**write [2]** 585/1 599/23
**writing [2]** 585/22 600/1
**written [1]** 598/4
**wrong [1]** 599/2

**Y**

**you'd [1]** 605/24
**youngest [1]** 582/4
**yours [1]** 586/1